**COORS BREWING COMPANY,**
Plaintiff,

v.

**Juan Carlos MENDEZ–TORRES,**
Defendant.

**Civil No. 06–2150(DRD).**

United States District Court,
D. Puerto Rico.

March 30, 2011.

Eric Perez–Ochoa, Katarina Stipec–Rubio, Pedro Jimenez–Rodriguez, Adsuar Muniz Goyco Seda & Perez Ochoa PSC, San Juan, PR, for Plaintiff.

Vivian Gonzalez–Mendez, Wandymar Burgos–Vargas, Deputy Secretary of Justice, Litigation Department of Justice of Puerto Rico, San Juan, PR, for Defendant.

### OMNIBUS OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

## I. PROCEDURAL HISTORY

The history of the instant case is tumultuous, spanning five years and encompassing a reversal and remand by the First Circuit, and a subsequent abrogation by the Supreme Court of the United States. *See Coors Brewing Co. v. Mendez–Torres,*

562 F.3d 3 (1st Cir.2009), *abrogated by Levin v. Comm. Energy, Inc.*, — U.S. ——, 130 S.Ct. 2323, 176 L.Ed.2d 1131 (2010) (expressly abrogating the First Circuit's opinion in the instant case).

The Court referred this complicated case (Docket No. 160) to Chief Magistrate Judge Justo Arenas for his recommendation. In this most recent *Report and Recommendation* (Docket No. 167), he set forth a detailed and precise recounting of the lengthy procedural history in the instant case, as well as several related cases of importance to the present action, which the Court hereby **ADOPTS** and **INCORPORATES BY REFERENCE.** Thus, in the interests of brevity and readability, the Court begins by recounting only the portions of this turbulent and litigation-fraught procedural history which are necessary for the purposes of the instant opinion.

For decades,[1] the Commonwealth of Puerto Rico has implemented an excise tax on beer, distinguishing between brewers who produce more than 31 million gallons annually ("large brewers") and those who produce less than 31 million gallons annually ("small brewers") in establishing tax rates. When this distinction between small and large brewers first arose, the United States Brewers Association ("USBA")[2] filed suit both in state and federal fora. *See U.S. Brewers P.R.* (*"U.S. Brewers P.R."*), 109 D.P.R. 456, 9 P.R. Offic. Trans. 605 (P.R.1980); *see also U.S. Brewers Ass'n v. Cesar–Perez*, 455 F.Supp.

1159 (D.P.R.1978), *remanded* 592 F.2d 1212 (1st Cir.1979) (*"U.S. Brewers"*), *cert. denied* 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 43 (1979), *abrogated by Mendez–Torres*, 562 F.3d 3, *abrogated by Levin*, 130 S.Ct. 2323. Eventually, in 1980, the state court suit found itself in the Puerto Rico Supreme Court. *See U.S. Brewers P.R.*, 109 D.P.R. 456, 9 P.R. Offic. Trans. 605. The Puerto Rico Supreme Court reviewed the constitutionality of the tax, as well as its validity under the Federal Relations Act, ultimately determining on the merits of the case that the tax was, in fact, constitutional. *Id.*

The federal suit also proceeded beyond the trial court level to seek appellate review. *See U.S. Brewers*, 592 F.2d at 1213. Initially the District Court ruled that the Butler Act did not "preclude the enjoinment of a Commonwealth's tax where a clear violation of [the Federal Relations Act] is established, and where there exists no plain, speedy and efficient remedy in the local forums." 455 F.Supp. at 1162. Upon appeal, the plaintiffs/appellants asserted that the Butler Act[3] did not bar federal jurisdiction to their suit challenging the state beer excise tax as they did not seek to prevent the collection of a tax. 592 F.2d at 1214. The Court of Appeals for the First Circuit disagreed, stating that "it might well be proper to apply the Butler Act beyond its literal terms to encompass [a] suit to enjoin enforcement of a tax exemption." *Id.* Ultimately, however, the Court of Appeals based their decision to remand so that the District Court might

---

1. As noted by the First Circuit, in 1978, Puerto Rico adjusted the excise tax on beer to distinguish between small and large brewers, taxing each category at a different rate per gallon. *Coors Brewing*, 562 F.3d at 6. Previously, all brewers and wine makers were taxed at the same rate. *United States Brewers Ass'n v. Sec'y of the Treas. of the Commonwealth of Puerto Rico*, 109 D.P.R. 456, 9 P.R. Offic. Trans. 605 (1980).

2. Plaintiff's predecessor, the Adolph Coors Company, was a member of the USBA.

3. The Butler Act reads: "[n]o suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the District Court of the United States for Puerto Rico." 48 U.S.C. § 872.

dismiss for want of jurisdiction upon "considerations which underlie ... the Butler Act, 'equity practice, ... principles of federalism ... and the imperative need of a State to administer its own fiscal operations.'" *Id.* (citations omitted).

Some time later, in 2002, Puerto Rico enacted Act No. 69, which amended the beer tax, increasing the large brewer tax above the traditional rate, which was never in excess of $0.55 greater than the tax imposed upon small brewers. Under Act No. 69, large brewers paid $4.05 in excise taxes and small brewers paid only $2.15. *See* P.R. Laws Ann. tit. 13 § 9574. This new law provided for four gradational steps between brewers who produced between 9 million and 31 million gallons of beer annually and included an exemption for companies who brewed more than 9 million gallons, but less than 31 million gallons, allowing them to pay the lowest tax rate for the first 9 million gallons.

After entry of Act 69, the Puerto Rico Association of Beer Importers[4] filed suit in Puerto Rico Superior Court, although shortly thereafter, Coors withdrew its claims without prejudice. *Mendez–Torres,* 562 F.3d at 6 (outlining the procedural history of *P.R. Ass'n of Beer Imps. v. Puerto Rico* ("*Beer Importers*"), 2007 TSPR 92, 171 D.P.R. 140 (P.R.2007), *cert. denied* 552 U.S. 1257, 128 S.Ct. 1649, 170 L.Ed.2d 354 (2008), for which the Court finds no official translation).[5] Ultimately, the Puerto Rico Superior Court dismissed the action, and this dismissal was upheld by the Puerto Rico Supreme Court. *Id.*

After it withdrew from the Puerto Rico Superior Court case, Coors then filed a challenge to the beer tax in the U.S. District Court for the District of Columbia.

*Coors Brewing Co. v. Calderon,* 225 F.Supp.2d 22, 23 (D.D.C.2002). The District Court eventually dismissed the action for lack of jurisdiction under the Butler Act, citing the First Circuit's concern in *U.S. Brewers* with principles of equity and federalism in reaching its determination. *Calderon,* 225 F.Supp.2d at 25–26 (citing *U.S. Brewers,* 592 F.2d at 1215). Upon appeal, a settlement was reached under which Coors agreed that the District Court's judgment "determines with finality the Court's lack of jurisdiction but is without prejudice to the substantive claims that the Court lacked jurisdiction to address." *Mendez–Torres,* 562 F.3d at 6.

In 2004, the Puerto Rico legislature amended the beer excise tax, again retaining the graduated taxation scheme ("challenged statute" or "special exemption"). *Id.* at 10. Subsequently, in 2006, Coors Brewing Company ("Coors" or "Plaintiff") filed the instant action, attacking the validity of the graduated beer tax. Specifically, Coors alleges that the special exemption for small brewers is invalid and unenforceable for violating both the Federal Relations Act and the Commerce Clause of the United States Constitution.[6]

The Secretary of the Treasury for the Commonwealth of Puerto Rico ("Secretary" or "Defendant") subsequently filed a motion to dismiss in which he alleged that this Court lacks subject matter jurisdiction under the Tax Injunction Act[7] and the Butler Act. Further, Defendant alleged that collateral estoppel and/or claim preclusion prevented the Court from deciding the case, as litigation in the state courts was ongoing. Finally, Defendant asserted that the stipulations agreed to in *Calderon*

---

4. Coors is an affiliate of this organization.

5. A translation of this case may be found at Docket No. 47.

6. U.S. Const. art. I, § 8, cl. 3.

7. 28 U.S.C. § 1341.

had a preclusive effect on this Court's jurisdiction. Ultimately, the Court declined to dismiss on res judicata grounds, instead relying upon the *Rooker–Feldman* doctrine, the Butler Act and the preclusive effect of the *Calderon* case and related stipulations to dismiss Plaintiff's federal claims with prejudice.

However, upon appeal to the First Circuit, that Court of Appeals disagreed with the District Court's decision, reversing the same and remanding the case. *Mendez–Torres*, 562 F.3d at 23. The Honorable Chief Magistrate Judge Justo Arenas has provided an extremely thorough and detailed account of the intricacies of that opinion in his *Report and Recommendation;* accordingly, the Court shall merely outline the First Circuit's decision and highlight the salient points therein.

At the outset of its opinion, the First Circuit determined that the preclusive effect of the *Calderon* stipulations was correctly "assessed through the lens of issue preclusion[,]" and then found that the 2004 amendment to the tax was "immaterial" and would not "defeat issue preclusion." *Id.* at 9–10.

The Court of Appeals subsequently addressed Plaintiff's argument that the Supreme Court's case of *Hibbs v. Winn,* 542 U.S. 88, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004), represented an intervening change in controlling law. *Mendez–Torres,* 562 F.3d at 12. When undertaking its analysis of this argument, the First Circuit expressly overrode its previous ruling in *U.S. Brewers,* finding that *Hibbs* resulted in a restricted application of the comity principles underlying the Butler Act and, accordingly, found that neither the Butler Act nor unadorned principles of comity barred the instant suit. *Id.* at 16–18. Consequently, the First Circuit found no jurisdictional bar and addressed the *Calderon* stipulations, disagreeing with this

Court's opinion that they barred Plaintiff from re-litigating the issue of subject matter jurisdiction in the instant case. *Id.* at 12–13.

The Court of Appeals then proceeded to address the effect of the Butler Act on the Court's jurisdiction in the instant case, determining that, in light of its reading of *Hibbs,* the Act did not prevent the Court from exercising subject matter jurisdiction as Plaintiff seeks to invalidate an exemption which would result in taxes being raised rather than eliminated. *Id.* at 14–16.

The First Circuit subsequently addressed the Defendant's assertion that the principles of comity which the appellate court relied upon in *U.S. Brewers* would dictate dismissal in the instant case. *Id.* at 16–18. The Court of Appeals first recognized that, absent the Supreme Court's decision in *Hibbs, U.S. Brewers* would still control. *Id.* at 16. However, relying upon its earlier reading of *Hibbs* as indicating a new, restricted application of comity principles, the appellate court rejected Defendant's argument. *Id.* at 17–18. The Court of Appeals ended its opinion by also rejecting the District Court's reliance upon the *Rooker–Feldman* doctrine and *U.S. Brewers P.R.,* stating that Coors was not a party to that case and that it was also not sufficiently represented in that action "so as to be precluded in this action" for the doctrine to apply. *Id.* at 19–22.

Following the remand, on June 26, 2009, Plaintiff renewed (Docket No. 96) a previously-filed motion for summary judgment (Docket Nos. 51, 52 & 54). Subsequently, the parties filed a joint status report (Docket No. 121) on December 23, 2009, which provided in part that "[t]he parties have agreed to hold all other proceedings in abeyance until the Court rules on the Motion for Summary Judgment."

On March 16, 2010, Defendant requested relief (Docket No. 136) from an agreement severely limiting the scope of discovery regarding privity as set forth in the joint status report. Shortly thereafter, Plaintiff vehemently objected (Docket No. 139).

On June 1, 2010, the legal landscape of the instant case changed drastically, however, with the Supreme Court's unanimous opinion[8] in *Levin v. Commerce Energy, Inc.*, 130 S.Ct. 2323. That case abrogated the First Circuit's opinion in the instant case, as the Supreme Court found that, even in the wake of *Hibbs*, the reach of comity is significantly more expansive than the First Circuit (and Seventh and Ninth Circuits, along with the Sixth Circuit, which had rendered the previous *Levin* decision) presumed. *See id.* at 2335–36. The Supreme Court clarified that the footnote in *Hibbs* upon which the First and Sixth Circuits erroneously relied in declining to dismiss for comity reasons, in fact "did not ... recast the comity doctrine." *Id.* at 2335. The *Levin* court then proceeded to state that a "confluence of factors", specifically the request to review a "commercial matter over which [the state] enjoys wide regulatory latitude[,]" which rendered heightened judicial scrutiny inapplicable; the use of a challenge to a tax scheme to improve competitive position; and the preferable position of state courts, rather than federal courts, to adjudicate the matter "demand deference to the state adjudicative process." *Id.* at 2336.

Shortly thereafter, on July 14, 2010, Defendant filed a motion to dismiss (Docket No. 144) in light of the Supreme Court's decision in *Levin.* Defendant argues that, following the *Levin* decision, the Court need no longer follow the abrogated First Circuit opinion in the instant case under either the law of the case doctrine or *stare decisis.* Accordingly, Defendant asserts that, following *Levin,* this Court should refrain from entertaining the instant challenge to a state taxation scheme as it does not employ a classification subject to heightened scrutiny or which impinges on a fundamental right.

In its response, Plaintiff first asserts that, under the terms of the stipulations contained within the joint status report, the Court must resolve its motion for summary judgment prior to addressing Defendant's motion to dismiss. Additionally, Plaintiff asserts that, as evidenced by the joint status report, "Defendant has voluntarily chosen to submit the resolution of the merits of Coors' claim to the Court." Further, Plaintiff avers that, even under *Levin,* dismissal based upon principles of comity is inappropriate in the instant case as the Puerto Rico state courts would not provide adequate redress in the instant case based upon their previous rulings. Finally, Plaintiff avers that it is speculative whether Puerto Rico state courts will follow federal constitutional rule regarding the instant challenge based upon the alleged disfavor with which the Puerto Rico state courts view the importance of legislative history in constitutional challenges.

On December 29, 2010, the Court referred (Docket No. 160) the pending motion to dismiss and all other related pending motions to Chief Magistrate Judge Justo Arenas for entry of his *Report and Recommendation* in the instant case. On February 10, 2011, Magistrate Judge Arenas entered the same (Docket No. 167). *See* 787 F.Supp.2d at 177–99. In this lengthy and exhaustive document, the Magistrate Judge first identified as a gate-

---

**8.** There were no dissenters in this case, although Justices Kennedy, Alito and Thomas, joined by Scalia filed concurring opinions.

way issue Plaintiff's contention that the stipulations entered into by the parties continue to bind them, as it determines whether the Court must resolve the pending motion for summary judgment or the motion to dismiss first. After reviewing the applicable jurisprudence regarding stipulations, the Magistrate Judge concluded that the Defendant entered knowingly into the stipulations and may not be released from them at this time. Thus, Magistrate Judge Arenas recommended that the Court address the pending motion for summary judgment before the motion to dismiss, pursuant to the terms of the stipulations.

The Magistrate Judge then identified the constitutional challenges under the dormant Commerce Clause enumerated by Plaintiff in its motion for summary judgment. He separated the challenges into four categories in order to analyze them: facial discrimination; discriminatory intent; legislative history; and discriminatory effect. The Magistrate first addressed the facial discrimination challenge, determining that no language exists in the challenged statute imposing the excise tax which qualifies as facially discriminatory.

Subsequently, Magistrate Judge Arenas addressed Plaintiff's assertions of discriminatory intent and effect. He first reviewed the statutory language and challenged statute's statement of purpose to determine that the "statute and its progeny were designed to protect small businesses from the potentially debilitating effect of steep excise taxes." The Magistrate then reviewed the legislative history, upon which Plaintiff heaped much weight in its motion for summary judgment. Upon this review, he determined that, while some members of the legislature expressed that they intended to protect the local brewery, Cervecería India, with the legislation, that subsection of the

legislature did not represent the entire legislature. Further, he found that protection of a local business was "at most an incidental purpose" that did not justify heightened scrutiny and that Puerto Rico has not shifted the costs of doing business to other states.

Having found no facial discrimination or discriminatory purpose in the challenged statute, the Magistrate Judge proceeded to determine whether the statute indeed created a discriminatory effect. He noted that Plaintiff proffers market data to support its contention that Cervecería India has experienced significant growth at the expense of competitors' market share. However, the Magistrate Judge found that the case upon which Plaintiff relied to show the unconstitutionality of the special exemption, *Bacchus Imps., Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) was easily distinguishable from the instant case. Ultimately, Chief Magistrate Judge Arenas found that a reasonable factfinder could not conclude that the challenged statute has a substantial discriminatory effect as, by Plaintiff's own admission, Cervecería India's production was forecasted to increase, putting it in a higher tax bracket along with similarly-sized out-of-state producers.

Finally, the Magistrate Judge noted that Plaintiff "reserve[d] the right later to seek summary judgment on the ground that . . . the purported local benefits of the Special Exemption are clearly outweighed by the burdens it imposes on out-of-state brewers." Although Plaintiff did not further elaborate on this theory, the Magistrate addressed the matter anyways, finding that the benefits of the tax scheme outweighed any burdens. Accordingly, the Magistrate Judge found that Plaintiff had failed to show that summary judgment in its favor was appropriate and recom-

mended that the Court deny the pending motion for brevis disposition.

Thus, having abided by the stipulation which mandates disposition of the summary judgment prior to addressing other pending motions, the Magistrate Judge then turned to the pending motion to dismiss which the Court had referred to him. He first outlined the First Circuit's previous decision in the instant case, noting where this opinion was overruled by the Supreme Court's decision in *Levin*.[9] As the pending motion to dismiss represents a challenge to the Court's subject matter jurisdiction in the instant case, the Magistrate Judge set forth the standard of review applicable as that of Rule 12(b)(1) of the Federal Rules of Civil Procedure. He then addressed the applicability of the "*Levin* exception" factors, determining that none of the factors are present in the instant case.

Finally, Magistrate Judge Arenas addressed Plaintiff's argument that the state courts of Puerto Rico cannot provide an adequate remedy due to the *stare decisis* effect of the *Beer Importers* case. The Magistrate Judge first reviewed the decision of the Puerto Rico Supreme Court in that case, determining that it was not a *pro forma* rejection of the constitutional challenge to the current statute's predecessor, but rather presented a holistic view of the issues. Finally, the Magistrate Judge recommended that the Court reject Plaintiff's assertions that the available state remedies are inadequate, stating that: "Contrary to the plaintiff's claims, the Puerto Rico courts have addressed similar cases substantively, taking care to

provide strong support for their decisions." Ultimately, Magistrate Judge Arenas noted that Plaintiff's remaining claims were all hinged upon a finding that the challenged statute is unconstitutional and recommended their dismissal along with the dismissal of Plaintiff's constitutional challenge.

On February 17, 2011, Plaintiff filed its objections to the Magistrate Judge's *Report and Recommendation* (Docket No. 168). Therein, it asserts that Chief Magistrate Judge Arenas erred when he recommended that the Court deny its pending motion for summary judgment. Plaintiff primarily protests the Magistrate Judge's failure to provide more weight to evidence that some legislators evinced the desire to protect Cervecería India as an express rationale for passing the contested legislation. Plaintiff asserts that, if the Magistrate Judge had afforded this evidence more weight, he would have concluded that the historical background and legislative record shows a discriminatory intent. In setting forth this argument, Plaintiff places great emphasis on a recent First Circuit case, *Family Winemakers v. Jenkins*, 592 F.3d 1 (1st Cir.2010),[10] which it asserts supports a finding that the challenged excise tax is unconstitutional. Further, Plaintiff objects to the Magistrate's finding that the tax does not have a discriminatory effect on out-of-state brewers, again placing primary emphasis on the First Circuit's decision in *Family Winemakers*. Thus, Plaintiff asserts that the beer excise tax has both a discriminatory purpose and effect and, accordingly, that

9. Specifically, Magistrate Judge Arenas stated that: "The two relevant holdings [overruled by the Supreme Court] concerned the applicability of the Butler Act and, through *in pari materia* extension, the Tax Injunction Act, as well as the principles of comity."

10. Plaintiff has placed emphasis on this case since its publication, as evidenced by its supplemental motion to the Court (Docket No. 125), filed only days after the First Circuit published *Family Winemakers*.

the Magistrate Judge should have granted its motion for summary judgment.

Plaintiff also objects to the Magistrate Judge's recommendation that the Court grant Defendant's motion to dismiss, alluding to its previous argument that the state has voluntarily submitted itself to the federal forum, thus rendering *Levin* irrelevant. Further, Plaintiff again asserts that the "Puerto Rico Supreme Court will almost certainly refuse to evaluate Coors' claims based on its rote application of *stare decisis*" and that the Puerto Rico courts shall not consider legislative history in rendering a determination on the merits. Thus, Plaintiff asserts that dismissal for comity reasons is inappropriate in the instant case.

On March 3, 2011, Defendant filed his response to Plaintiff's objections (Docket No. 170).[11] Therein, Defendant contests Plaintiff's assertions that the stipulations reached between the parties constitute an implicit waiver of the Court's review of subject matter jurisdiction.

Further, Defendant contests Plaintiff's assertion that the Magistrate Judge erred in recommending that Plaintiff's motion for summary judgment be denied. Defendant notes that Plaintiff's objections fail to account for the history and stated purpose of the tax and disregards the federal statute upon which the state tax was modeled, which has also been mimicked by other states.

## II. REFERRAL TO THE MAGISTRATE JUDGE

The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* FED.R.CIV.P. 72(b); *see also* Local Rule 72(a); *see also Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections. FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

---

11. Concurrently with this filing, Defendant filed a motion for leave to file excess pages (Docket No. 169), which the Court subsequently granted (Docket No. 175).

The following day, Plaintiff filed a motion to strike (Docket No. 171) the response as an untimely objection and for failure to comply with the page limit imposed by the applicable rules of civil procedure. Acting out of an abundance of caution, the Court **DENIES** this request as to any materials contained in the filing which constitute a response to Plaintiff's objections. However, the Court shall not consider any material which constitutes separate objections raised by Defendant as any such objections are untimely. Further, the Court shall not consider any material filed as attachments to the response which was not properly set forth before the Magistrate, as this material is now untimely. The Court specifically refuses to consider pages 36 through 38 of the response, as the sections of legal argument contained therein do not directly relate to either the Magistrate Judge's *Report and Recommendation* or Plaintiff's objections thereto and as the Court should not address any matter that was not timely filed before the purview of the Magistrate Judge. *See e.g. Fireman's Ins. Co. of Newark, New Jersey v. Todesca Equip. Co.*, 310 F.3d 32, 38 (1st Cir.2002).

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *see also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *see also Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

■ The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir.1996) (*en banc*) (extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir.1982) (en banc) (appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for

"plain error"); *see also Nogueras–Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R.2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED. R.CIV.P. 72(b)); *see also Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa.1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

■ Thus, the Court shall review Chief Magistrate Judge Arenas' *Report and Recommendation* for plain error as to the sections to which Plaintiff has raised no objections and *de novo* as to all objected-to portions. Upon such a review of the Magistrate's extremely well-reasoned *Report and Recommendation*, the Court **ADOPTS** and, as set forth below, **INCORPORATES** the same **BY REFERENCE.** The Court elaborates below.

### III. STIPULATIONS

As aptly noted by the Magistrate Judge, a threshold issue to the Court's inquiry is whether the stipulations contained in the joint status report[12] shall be upheld. If the Court agrees with the Magistrate Judge's recommendation that the Court uphold the stipulations, then it must resolve Plaintiff's motion for summary judgment before proceeding to the merits of Defendant's motion to dismiss. Ultimately, this decision could prove fatal to Defendant's defense, as, if the Court were to grant Plaintiff's motion, the instant case would close in favor of Plaintiff without ever reaching the jurisdictional issue.[13]

---

**12.** Of particular importance is the parties' stipulation agreeing that the Court shall hold in abeyance all other matters until the summary judgment is resolved.

**13.** Under any other circumstances, the Court would not consider the pending Plaintiff's motion for summary judgment prior to addressing the pending motion to dismiss pursu-

■ However, neither party has objected to the Magistrate Judge's recommendation that the Court uphold the stipulations [14] which require the Court to rule on the motion for summary judgment prior to any other pending matter. Accordingly, the Court must only review the Magistrate's recommendation as to the stipulations for plain error.

■ Upon such review, the Court agrees with Magistrate Judge Arenas' statement that the *Levin* decision does not "exonerate [Defendant] from his commitments under the joint agreement." Further, the Court agrees that, where no justifiable reason to set aside a stipulation exists, the Court should only do so where good cause exists, particularly where a manifest injustice would occur if the Court upheld the stipulation. *See Caban Hernandez v. Philip Morris U.S.A., Inc.,* 486 F.3d 1, 6 (1st Cir.2007) ("Once a party has entered into a stipulation, however, that party is not at liberty to renege unilaterally ... without leave of court, which ordinarily will not be granted absent a showing of good cause."); *see also Chao v. Hotel Oasis,* 493 F.3d 26, 31–32 (1st Cir.2007) *see also TI Fed. Cred. Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995) (providing that manifest injustice is an acceptable reason

for the Court to refuse to uphold a stipulation). Defendant has not set forth any showing of good cause for which the stipulation should be set aside. Indeed, as the Magistrate Judge correctly found, Defendant has not shown that he will "suffer any manifest injustice from having the summary judgment motion decided first."

As the Magistrate Judge stated, at the time when the summary judgment was renewed, Plaintiff "had the upper hand" as it had just emerged as the victor at the appellate level and Defendant should have considered the "double-edged sword" before entering into the stipulation. Further, Defendant entered no timely objection to the Magistrate's recommendation that the Court enforce the stipulation and address the motion for summary judgment first. Thus, although the result could potentially harm Defendant if the Court were to grant Plaintiff's request for summary judgment before considering his motion to dismiss, he shall be held to his word, and the Court shall address the summary judgment first.

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Noting that Defendant never opposed Plaintiff's motion for summary judgment,

ant to an abstention for comity reasons. This is particularly true as the Court reads *Levin* as imposing a duty on federal district courts to dismiss actions which fall within *Levin's* purview as expeditiously as possible in order to allow challengers and those defending state statutes to develop and seek a determination regarding their cases in state courts at the earliest possible junction. *See Levin,* 130 S.Ct. at 2330 (discussing the importance of abstention in order to allow the "States and their institutions [to be] left free to perform their separate functions in separate ways").

14. Although not directly resolved in the Magistrate Judge's *Report and Recommendation,* the Court understands that the rationale by which the Magistrate determined that the

Court should uphold the stipulations as to the motion for summary judgment would apply with equal force to Defendant's request to extend discovery regarding privity (Docket No. 136) limited by a stipulation entered in the same joint status report. Accordingly, although the Court previously indicated that it might be inclined to grant a request relating to discovery regarding privity (Docket No. 138), given Plaintiff's subsequent objection (Docket No. 139) and the Magistrate Judge's well-reasoned recommendation regarding this parallel matter, the Court is now inclined to **DENY** the request. However, for the reasons stated below, this request becomes **MOOT** upon entry of the instant *Opinion and Order.*

either when it was first filed in 2007 or when it was renewed in 2009, the Magistrate Judge proceeded to address Plaintiff's legal and factual arguments. First, the Magistrate Judge summarily dismissed as moot Plaintiff's argument that the First Circuit's previous opinion carries weight in the instant case, as *Levin* abrogated that opinion. *See* 130 S.Ct. at 2335–36. Neither party has contested this determination and the Court agrees with the Magistrate Judge's concise disposition of this argument; as a matter of law, this argument must fail. *See id.* Thus, the Court, like the Magistrate before it, shall move quickly forward to address Plaintiff's other arguments for brevis disposition of its constitutional challenge.

## A. FACTUAL BACKGROUND

When analyzing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party, in this case favoring Defendant. *See Vera v. McHugh,* 622 F.3d 17, 26 (1st Cir.2010); *see also Agusty–Reyes v. Dept. of Edu.,* 601 F.3d 45, 48 (1st Cir.2010); *see also Cadle Co. v. Hayes,* 116 F.3d 957, 959–60 (1st Cir.1997). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] . . . we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera,* 622 F.3d at 26 (internal quotations and citation omitted); *see also Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996). Further, the Court will not consider hearsay statements nor allegations presented by parties that do not properly provide specific reference to the record. *See* D.P.R. Civ.R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001) (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *see also Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.") Both the Magistrate Judge and the Court in the instant *Opinion and Order* have recited the relevant facts with this standard in mind.

As an initial matter, the Court notes that Plaintiff has raised no objections to the Magistrate Judge's recitation of the properly-supported and uncontested material facts presented in its motion for summary judgment. Accordingly, the Court, having reviewed the same for plain error, and finding none, **ADOPTS** them and **INCORPORATES** them herein **BY REFERENCE.** Only for the sake of completeness does the Court reiterate the facts relevant to the present inquiry below.

Plaintiff alleges that Puerto Rico has protected the local beer industry, specifically Cervecería India, the island's sole brewing company, for decades. Plaintiff submits that the legislative record of the challenged statute evidences a legislative intent to protect Cervecería India, citing legislative, judicial and executive comments expressing concern that the "local beer industry [was] . . . being displaced by imported beer." Further, Plaintiffs point to the original $0.55 tax differential separating large brewers from small brewers, claiming that this differential is "patently discriminatory."

Further, Plaintiff asserts that, when this tax system failed to provide a sufficient competitive advantage for Cervecería

India, as it continued to lose market share, the Puerto Rico legislature once again acted. Along this vein, Plaintiffs state that the 2002 amendments occurred as the result of aggressive lobbying efforts by Cervecería India. As already stated above, these amendments raised the differential between the highest and lowest tax groups from $0.55 to $1.90, for an increase in excess of 345% over the original differential. Plaintiff points to the legislative record as an indication "that the 2002 amendments were motivated by a desire to insulate Cervecería India from the rigors of interstate competition."

Plaintiff also submits facts which it asserts supports its contention that the 2004 amendments are purposefully discriminatory against all brewers located outside of Puerto Rico. First, Plaintiff notes that, until 2004, only two of the sixteen beer manufacturers active in the Puerto Rican market produced less than nine million gallons annually, thus finding themselves in the lowest tax bracket. One of these two manufacturers was Cervecería India. However, due to strong growth in fiscal year 2003, Cervecería India's production then increased to an amount in excess of nine million gallons, which would have resulted in a considerable increase in the excise tax owed by the company. Additionally, as already noted, the 2002 amendments did not allow for the graduated tax increase included in the 2004 amendments.

Coors also sets forth as evidence statements by legislators, lobbyists and politicians [15] which they allege show that the graduated tax, and particularly the exemption for the smallest brewers, "was crafted in order to shield Cervecería India from

interstate competition." However, Plaintiff admits that the legislature included a neutral official statement of purpose with the statute, although it qualifies the statement as "strategic."

### B. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Telephone Co.,* 110 F.3d 174, 179 (1st Cir.1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-

---

**15.** The Court notes that the Magistrate Judge did not present an in-depth list of the statements upon which Plaintiff rests this statement. However, Plaintiff also did not object to the factual recitation provided by the Mag-

istrate and the Court finds the Magistrate Judge's recitation to be a proper summary of the relevant asserted undisputed facts. Accordingly, the Court sees no need to list each statement herein.

moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997). However, failure to oppose a motion for summary judgment does not merit granting of the same as a sanction; the Court must still analyze the pending motion and determine that no genuine issue of material fact exists prior to granting brevis disposition. *See De Jesus v. LTT Card Svcs., Inc.*, 474 F.3d 16, 20–21 (1st Cir.2007).

■■■■■ At the summary judgment stage, the trial court examines the record "in the light most flattering to the nonmovant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle*, 116 F.3d at 959–60 (emphasis ours). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473, 82 S.Ct.

486, 7 L.Ed.2d 458 (1962) (summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("[F]indings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir.2000) (finding that "determinations of motive and intent . . . are questions better suited for the jury"). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena*, 95 F.3d at 95.

## C. THE CONSTITUTIONAL CHALLENGE

■■■■ Plaintiff's constitutional challenge to the special exemption arises from an alleged violation of the dormant Commerce Clause.[16] The Commerce Clause of the Constitution provides Congress the power to "regulate Commerce . . . among the several States." U.S. CONST. art I, § 8, cl. 3. From this affirmative grant of power, a negative counterpart stems, called the dormant Commerce Clause. *Grant's Dairy–Maine, LLC v. Commissioner of Maine Dept. of Agriculture, Food and Rural Resources*, 232 F.3d 8, 18 (1st Cir.2000). The dormant Commerce Clause[17] "strip[s]

16. As the Magistrate Judge quoted,

> Our Constitution was framed upon the theory that the peoples of the several states must sink or swim together. Thus, this Court has consistently held that the Constitution's express grant to Congress of the power to regulate Commerce . . . among the several States, contains a further, negative command, known as the dormant Commerce Clause, that creates an area of trade free from interference by the States.

*Am. Trucking Ass'ns, Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 429, 433, 125 S.Ct.

2419, 162 L.Ed.2d 407 (2005) (internal quotations omitted). The dormant Commerce Clause's mandate applies with equal force to Puerto Rico as to the fifty states. *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 142 (1st Cir.2001).

17. The dormant Commerce Clause was drafted by the Founders to "avoid the economic Balkanization that had prevailed under the Articles of Confederation, under which states had enacted rampant tariffs and other trade barriers at the price of national economic

state governments of any authority to impede the flow of goods between states." *Cherry Hill Vineyard, LLC v. Baldacci,* 505 F.3d 28, 33 (1st Cir.2007).

■ Under the dormant Commerce Clause, "a state regulation that discriminates against interstate commerce **on its face, in purpose, or in effect** is highly suspect and will be sustained only when it promotes a legitimate state interest that cannot be achieved through any reasonable nondiscriminatory alternative." *Id.* (emphasis ours). However, statutes "that regulate evenhandedly and only incidentally burden commerce are subjected to less searching scrutiny" under the balancing test set forth in *Pike v. Bruce Church,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). *Cherry Hill,* 505 F.3d at 33.

■ Thus, as the Magistrate Judge correctly identified, the Court's first inquiry must be whether the challenged beer excise tax is facially discriminatory, or discriminates either in purpose or effect. If the answer to this question is yes, then the Court will apply heightened scrutiny and "generally [strike] down the statute without further inquiry." *Brown–Forman Distillers Corp. v. New York State Liquor Auth.,* 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986). Where discrimination is shown, only where the state then "demonstrate[s] that no reasonable nondiscriminatory regulation could achieve its [legitimate] objectives will the statute stand." *Cherry Hill,* 505 F.3d at 33.

### 1. FACIAL CHALLENGE

■ In his *Report and Recommendation,* the Magistrate Judge found that the

challenged statute does not violate the dormant Commerce Clause on its face. Plaintiff does not object to this finding; rather it challenges the Magistrate's findings that the statute did not violate the Constitution in either purpose or effect. Accordingly, the Court only reviews Magistrate Judge Arenas' finding regarding the facial challenge for plain error.

■ In relevant part, the challenged legislation reads: "(c) The benefits of this section shall also apply to the importers of the products described in this subsection whose producers meet the requirements established in subsection (b) of this section." P.R. LAWS ANN. tit. 13, § 9574(c). Upon plain error review of this language,[18] the Court finds no such error in the Magistrate Judge's determination that the challenged statute does not violate the dormant Commerce Clause on its face. Accordingly, the Court **ADOPTS** the Magistrate Judge's analysis and conclusions regarding Plaintiff's facial challenge to the statute.

### 2. DISCRIMINATORY PURPOSE

■ After reviewing the evidence of legislative intent, or purpose, provided by the challenged statute's statement of purpose and legislative history, the Magistrate Judge concluded that the Plaintiff had failed to show discriminatory purpose. Plaintiff objects to this finding. Specifically, Plaintiff asserts that evidence that "key legislators" explicitly advocated the passage of the statute in order to protect Cervecería India from competition provided sufficient foundation to find that the challenged legislation was discriminatory

unity." *IMS Health, Inc. v. Mills,* 616 F.3d 7, 27 n. 24 (1st Cir.2010) (internal quotation omitted).

**18.** Further, the legislation implementing the excise tax provides that: "Taxes shall be uni-

form and general for the products manufactured or produced abroad and introduced or imported into Puerto Rico as well as for those manufactured or produced in Puerto Rico." P.R. LAWS. ANN. tit. 13, § 9522.

in purpose and, accordingly, to find that it should be struck down as unconstitutional. The Court reviews the Magistrate Judge's recommendation *de novo.*

 The bedrock principle of a "discriminatory purpose" claim is that "[p]arties challenging the validity of a state statute . . . must show that the statute was prompted by a discriminatory purpose." *Wine and Spirits Retailers, Inc. v. Rhode Island,* 481 F.3d 1, 12 (1st Cir. 2007). Thus, "the initial burden of establishing discrimination rests with the challenger." *See Cherry Hill,* 505 F.3d at 33 (noting that the challenger retains the burden in the context of a discriminatory effects challenge). "The words of a legislative body itself, written or spoken contemporaneously with the passage of a statute, are usually the most authoritative guide to legislative purpose." *Id.*

 Two sources of legislative intent are presented to the Court in the instant case: first, the Court may look to the statement of purpose issued by the Puerto Rico legislature; next, the Court may consider statements made by legislators regarding the beer excise tax. As correctly quoted by the Magistrate Judge, the relevant portion of the statement of purpose reads:

> The tax measures established through this Act should not affect other areas of the economic basis of our Island. Thus, in the case of beer, the mechanism approved by the Supreme Court of Puerto Rico in *U.S. Brewers Association v. Secretario de Hacienda,* 109 D.P.R. 456 (1980) is used to guarantee that industries of less production may continue their operation without any alteration. In those cases, as their productive ca-

pacity increases, and as a result thereof, its financial stability, their responsibility before the public treasure shall also gradually increase. In view of this, it is the public policy of the Commonwealth to promote that small industries that produce beer do not suffer the burden of the new tax until their annual production and financial capacity justify it.

Act No. 69, H.B. 2244 (Conference) of the 14th Session of the 1st Legislature of Puerto Rico (approved May 30, 2002); P.R. LAWS ANN. tit. 13, § 9521 (2007). A reading of the statement of purpose thus shows that the articulated intent of the legislature upon entry of the graduated tax into law was to protect small brewers from the unsustainable load that the higher tax might represent for them. Accordingly, the distinction enunciated by the legislature was one of size, not one of geographic location. Thus, the Court finds that this evidence weighs against a finding of legislative intent to discriminate in favor of brewers located within Puerto Rico. *See Wine and Spirits,* 481 F.3d at 13 (finding that the articulated purpose of a challenged statute was not discriminatory).

 Plaintiff has, however, set forth some evidence of discriminatory purpose in the form of statements made by legislators concurrent with the consideration and passing of the law. It is this evidence upon which Plaintiff bases its objection to the Magistrate Judge's determination that no discriminatory purpose was shown. The Court does not find that such evidence is entirely without weight; statements by legislators can indeed indicate discriminatory purpose. *Family Winemakers v. Jenkins,* 592 F.3d 1, 7 n. 4 (1st Cir.2010).[19]

---

19. Plaintiffs rest their arguments in large part upon *Family Winemakers,* arguing that the Court should follow the letter of this case to grant their motion for summary judgment.

However, the Court is reluctant to blindly follow *Family Winemakers* at this time. In part, the Court's reluctance stems from its determination below that, based even solely

However, Plaintiff's arguments miss a crucial mark as they fail to acknowledge that, upon a motion for summary judgment, its burden is two-fold: it must labor under the "no genuine issue of material fact" standard of Rule 56; further, it bears the ultimate burden of proving discriminatory intent. *See Wine and Spirits*, 481 F.3d at 14–15; *see also Grant's Dairy*, 232 F.3d at 23–24 (discussing the heavy burden borne by a plaintiff who raises a constitutional challenge under the dormant Commerce Clause upon a motion for summary judgment, even where the defendant, rather than the plaintiff, is the moving party). Neither the Magistrate Judge nor the Court have altogether discounted legislators' statements provided by Plaintiff as evidence of discriminatory intent. Rather, the Court finds that these statements, particularly when weighed against the articulated statement of purpose issued by the legislature, are insufficient to carry Plaintiff's heavy burden to prevail on its motion for summary judgment. *See United States v. O'Brien*, 391 U.S. 367, 384, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.") At best, a genuine issue of material fact exists as to the legislators' true purpose in enacting the legislation. Accordingly, the Court does not find

that application of heightened scrutiny to the contested legislation is proper at this time based upon Plaintiff's discriminatory purpose theory. The Court accordingly **ADOPTS** the Magistrate Judge's *Report and Recommendation* as to potential discriminatory intent and the legislative history.

### 3. DISCRIMINATORY EFFECT

Plaintiff's final contention is that the beer excise tax is discriminatory in effect. In support of this assertion, Plaintiff points to market data which, according to Plaintiff, demonstrates that market share between brewers doing business in Puerto Rico changed due to the excise tax. Plaintiff contrasts general market data for beer sales in Puerto Rico with sales at military installations, where the tax has never taken effect. Data supplied by Plaintiff shows that the comparative sales at military installations have remained approximately the same.

Upon reviewing Plaintiff's proffered evidence, the Magistrate Judge recommended that the Court not find discriminatory effect, particularly as out-of-state small brewers have qualified as members of the lowest tax bracket and as Cervecería India was forecasted to enter the second-highest tax bracket in 2007. Plaintiff objects to this recommendation, relying entirely on *Family Winemakers*[20] to support its claim

upon factual evidence presented by Plaintiff, it cannot find that no genuine issue of material fact exists at this time, particularly where full discovery in the instant case never occurred. Further, the *Family Winemakers* court found a disparity between the challenged statute's asserted aims and the realities imposed, particularly present in the differences between federal definitions for "large" and "small" wineries and those imposed by the challenged law. *See* 592 F.3d at 15. Here, in contrast, the challenged legislation was modeled after similar tax classifica-

tions imposed by the federal government, as well as other states. Accordingly, the Court distinguishes the instant case from *Family Winemakers* at this time based upon crucial distinctions, both procedural and factual.

**20.** As stated above, the Court does not read *Family Winemakers* as mandating that the Court enter summary judgment in favor of Plaintiff in the instant case. While the Court would certainly include this case among the jurisprudence which it considered while reaching the ultimate issues in the instant case, the Court does not find it prudent to

that the statute has a discriminatory effect.

 It is well-settled that "[e]ven facially neutral laws enacted without discriminatory motive and in furtherance of legitimate local objectives may be discriminatory in effect (and, thus, [mandate heightened scrutiny] under the jurisprudence of the dormant commerce clause)." *Cherry Hill*, 505 F.3d at 33. "A state law is discriminatory in effect when, in practice, it affects similarly situated entities in a market by imposing disproportionate burdens on out-of-state interests and conferring advantages upon in-state interests." *Family Winemakers*, 592 F.3d at 10. Once again, the burden lies with the challenger. *Cherry Hill*, 505 F.3d at 33.

Although Plaintiff has produced some evidence that Cervecería India's market share increased while larger brewers' market share decreased in areas where the tax applied, the Court is hesitant to find discriminatory effect based solely upon this showing. Brewers from other states may also qualify as small brewers and, indeed, have, during the relevant period. Further, according to the information provided by Plaintiff, Cervecería India was slated to join the second-highest tax bracket in 2007 and, accordingly, would pay the same, higher tax as all other similarly situated brewers hailing from the contiguous 48 states, Alaska and Hawaii.

 Thus, the Court finds insufficient evidence of discriminatory effect to apply heightened scrutiny based thereupon at this time. The Court agrees with the Magistrate Judge's conclusion that "a reasonable fact-finder could not conclude on this record that either section 9521 or section 9574 has a substantial discriminatory effect by illustrating that any effect of these acts discriminates against out-of-state businesses while specifically exempting local businesses, in one way or another." The Court thus **ADOPTS** the Magistrate Judge's *Report and Recommendation* as to this matter.

### 4. *PIKE* BALANCING TEST

 As set forth above, the Court thus rejects Plaintiff's assertions that the special exemption is discriminatory on its face, in purpose, or in effect at this time. Where, as in the instant case,[21] "a statute has only indirect effects on interstate com-

grant summary judgment in favor of Plaintiff in the instant case based solely upon that case, particularly prior to the culmination of full discovery.

Additionally, inasmuch as Plaintiff previously relied almost exclusively upon *Bacchus Imps., Ltd. v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), previously, the Court also finds that it is wise to distinguish that case from the instant one. As accurately described by the Magistrate Judge, the *Bacchus* court found that a Hawaiian statute exempting a specialized fruit wine made in Hawaii from an excise tax had both the discriminatory purpose and effect where the state advanced a desire to help "struggling" in-state industries as its goal. *Id.* at 272, 104 S.Ct. 3049. To the contrary, as already discussed, the Puerto Rican legislature had no such clear protectionist goal in enacting the challenged legislation. Further, no distinction is made in the instant case between a class of product made solely in Puerto Rico and a broader class made elsewhere.

21. While Plaintiff protests that the Magistrate Judge should not have addressed this portion of the analysis at this stage, the Court finds that, without this crucial final step, its analysis would be incomplete and, accordingly, shall address it as well, based upon the record before it, despite Plaintiff's failure to fully brief the issue previously. *See Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 107 (3d Cir.2011) (stating that, where no finding of discriminatory purpose or effect is shown, and heightened scrutiny therefore does not apply, the Court should then employ the *Pike* balancing test to determine whether the challenged statute is properly struck down).

merce and regulates evenhandedly" the Court should follow the balancing test set forth in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), and "examine[ ] whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Brown,* 476 U.S. at 579, 106 S.Ct. 2080.

▇▇▇▇▇ The First Circuit has recognized that:

> the *Pike* test involves three separate steps. First, we are to evaluate the nature of the putative local benefits advanced by the statute. Second, we must examine the burden the statute places on interstate commerce. Finally, we are to consider whether the burden is 'clearly excessive' as compared to the putative local benefits.

*Pharmaceutical Care Mgt. Assoc. v. Rowe,* 429 F.3d 294, 312 (1st Cir.2005). Upon the record as presently developed, the Court finds, on the "putative benefits" side of the scale, ten million dollars in tax revenue produced for Puerto Rico by the graduated excise tax, which allows companies to pay according to their economic capabilities in order to maximize revenue. The Court finds no evidence of countervailing burdens [22] to weigh against this benefit and, accordingly, cannot find that such burdens are "clearly excessive" as compared to the benefit to invalidate the special exemption. Accordingly, and particularly as the Court should always apply a presumption in favor of a legislation's constitutionality, the Court declines at this juncture to find that the challenged statute violates the dor-

mant Commerce Clause. *See IMS Health, Inc. v. Ayotte,* 550 F.3d 42, 63 (1st Cir. 2008). Thus, the Court hereby **ADOPTS** the Magistrate Judge's *Report and Recommendation* and **DENIES** Plaintiff's pending motion for summary judgment.

## V. DEFENDANT'S MOTION TO DISMISS

Following the Supreme Court's decision in *Levin,* Defendant moved for dismissal (Docket No. 144) of the instant case. Defendant argues that, because *Levin* abrogated the First Circuit's opinion in the instant case, the Court is no longer obligated to follow the First Circuit's previous determination regarding comity. Moreover, Defendant argues that, under *Levin,* the Court should dismiss the instant case for comity reasons.

Plaintiff opposed the motion to dismiss (Docket No. 151) shortly thereafter on several grounds. First, Plaintiff argues that, under the terms of the stipulations, the Court may not consider Defendant's motion to dismiss until after Plaintiff's motion for summary judgment is resolved.[23] Next, Plaintiff asserts that Defendant voluntarily submitted to this Court's jurisdiction by entering into stipulations with Plaintiff and by litigating in this forum. Plaintiff also avers that it would not obtain an adequate remedy if forced to litigate in the Puerto Rico state court system. Specifically, Plaintiff hypothesizes that the Puerto Rico courts will invoke *stare decisis* based upon the Puerto Rico Supreme Court's decision in *Beer Importers.* Plaintiff further argues that it is speculative

---

**22.** While the Magistrate Judge proffered an educated opinion about potential burdens, the Court declines to do so, instead limiting itself to the evidence provided in conjunction with the motion for summary judgment, particularly as Plaintiff bears the burden of showing that a burden is "clearly excessive" falls with

the challenger to a statute. *See Pharmaceutical Care Mgt. Assn.,* 429 F.3d at 313.

**23.** Because the Court has already resolved the motion for summary judgment above, the Court finds that this argument is at this time **MOOT.**

whether the Puerto Rico state courts will choose to "follow the federal constitutional rule" as they will likely fail to consider legislative history in establishing discriminatory purpose. Additionally, Plaintiff argues that equitable concerns do not support dismissal at this late stage of the litigation and that, if the Court retains jurisdiction, it could certify the remedies question to the Puerto Rico Supreme Court.[24]

In his *Report and Recommendation*, Chief Magistrate Judge Arenas reviewed *Levin's* holding and its effect on the First Circuit's previous decision in detail, finding that *Levin* indeed fundamentally altered the landscape of the Court's comity inquiry. He then stated that "at this stage of the litigation, there are now two, and only two avenues for this court to retain the case." First, he identified what he termed the *"Levin* exception" factors, determining that the instant case did not represent one where an exception should generally apply.

Further, Magistrate Judge Arenas noted that, if Plaintiff's argument is correct and the state forum does not provide an adequate remedy, the Court may retain jurisdiction. However, upon an in-depth review of *Beer Importers*,[25] the Magistrate Judge concluded that the Supreme Court of Puerto Rico had conducted a comprehensive review of the applicability of the dormant Commerce Clause, drawing from state precedent, federal precedent and

Puerto Rico policy concerns to determine that the dormant Commerce Clause indeed applied with equal force to Puerto Rico as to any State of the Union. The Magistrate Judge then noted that the Puerto Rico Supreme Court followed a similar constitutional analysis in *Beer Importers* to that which he performed while giving his recommendation regarding Plaintiff's motion for summary judgment. Thus, the Magistrate concluded that the Puerto Rico court system could provide Plaintiff with a "plain, speedy and efficient" remedy and, accordingly, that *Levin* should apply to bar the instant suit in federal court.

When Plaintiff objected (Docket No. 168) to the Magistrate Judge's recommendation, it focused on two areas. First, Plaintiff objects to the Magistrate Judge's failure to address its argument that Defendant has voluntarily submitted to this Court's jurisdiction. Then, Plaintiff objects to the Magistrate Judge's determination that the state court system would provide an adequate forum, simply asserting that the "Puerto Rico Supreme Court will almost certainly refuse to evaluate Coors' claims based on its rote application of *stare decisis* " and that the Court refuses to consider legislative history.

Defendant subsequently responded to Plaintiff's objections (Docket No. 170). First, Defendant vehemently disagrees with Plaintiff's assertion that Defendant

---

**24.** The Court shall not create such a piecemeal case if it indeed decides that the *Levin* factors are met herein as it understands that *Levin* mandates abstention rather than mere deference in response to such comity concerns. Although *Levin* notes that, where the Supreme Court of the United States, upon review of a state-court decision, "finds a tax measure constitutionally infirm" that Court will allow the state court to decide the appropriate remedial effects, the *Levin* court specifically cautions against allowing a federal court to adjudicate a constitutional challenge on the merits, then send the case to a state

court to decide the remedy. *Levin*, 130 S.Ct. at 2334.

**25.** The Court notes that, although the Magistrate Judge cites an official translation of this case in his *Report and Recommendation*, the citation provided by the Magistrate is faulty and the Court has been unable to locate an official translation by other means. Fortunately, a translation of the case is also found at Docket No. 47. Accordingly, the Court has used this translation in the instant analysis.

voluntarily submitted to the Court's jurisdiction by entering into the stipulations. Defendant notes that Plaintiff failed to cite any language under which Defendant expressed an intention or desire to voluntarily submit to the federal forum. Further, Defendant notes that the stipulations related entirely to the parameters of discovery relating to Plaintiff's motion for summary judgment after the First Circuit entered an unfavorable ruling regarding Defendant's first attempt to extract itself from this forum. Additionally, Defendant rebuts Plaintiff's assertion that the state court system cannot provide an adequate remedy, stating that Plaintiff's arguments are speculative at best, citing First Circuit jurisprudence which runs contrary to Plaintiff's assertions.

Accordingly, the Court shall address the objected-to recommendations of the Magistrate Judge regarding the motion to dismiss *de novo*. However, as to the unobjected-to portions, the Court shall employ only plain error review. As a preliminary matter, the Court notes that the Magistrate Judge has provided an excellent summary of both the First Circuit opinion in the instant case and the Supreme Court opinion in *Levin* and, accordingly, **ADOPTS** that portion of the *Report and Recommendation* and **INCORPORATES IT HEREIN BY REFERENCE** in order to supplement the summaries already provided by the Court above.

## A. VOLUNTARY SUBMISSION

As an initial matter, the Court shall address Plaintiff's assertion that Defendant has voluntarily submitted to the Court's jurisdiction, which the Magistrate Judge did not directly address. In the instant case, Defendant has repeatedly moved to dismiss based, in part, on comity grounds (Docket Nos. 13 & 144). In fact,

the stipulations upon which Plaintiff's argument is based were only entered into after the First Circuit remanded based upon its finding that comity concerns did not dictate dismissal of the instant action. Further, as Defendant correctly notes, those stipulations related to post-remand discovery and do not contain an express submission to the Court's jurisdiction. *See American Jurisprudence Federal Courts* § 1098 (2d ed. 2011) (stating that abstention may be waived by the state's **express request** that the Court address a constitutional challenge on the merits).

■ Accordingly, the Court is reluctant to impute a voluntary submission to a state-party who has repeatedly requested that the Court abstain from exercising its jurisdiction based upon a document which was only entered after the First Circuit erroneously determined that principles of comity and the Butler Act did not support dismissal of the instant action. Thus, the Court finds that Defendant did not voluntarily submit to the Court's jurisdiction and, consequently, finds that the Supreme Court's decision in *Levin* applies to the instant case.

## B. APPLICATION OF *LEVIN*

■ In *Levin*, the Supreme Court abrogated the First Circuit's decision in the instant case, indicating that both the First Circuit and the Sixth Circuit had improperly applied the footnote in *Hibbs* as constricting the application of comity to TIA and, by extension, Butler Act cases. *Levin*, 130 S.Ct. at 2336. Ultimately, the Court identified three factors present in *Levin* which made comity-based abstention appropriate. *Id.* First, the challenged matter did not "involve any fundamental right or classification [26] that attracts

---

26. Inasmuch as the state's "regulatory lati- tude" is relevant to this part of the inquiry,

heightened [27] judicial scrutiny." *Id.* Second, the challengers "endeavor[ed] to improve their competitive position." *Id.* Finally, the state courts were in a position to correct a violation and offer a remedy which federal courts could not provide. *Id.*

■ In the instant case, the Magistrate Judge correctly concluded that the challenged matter did not involve a fundamental right or classification that mandates heightened scrutiny. Plaintiff has not objected to this finding and the Court finds that the Magistrate's assessment of this factor is, indeed, correct. Further, Plaintiff has not challenged the Magistrate Judge's finding that Plaintiff seeks to improve its competitive position by instituting the instant suit. The Court also agrees with this finding as, in the instant case, Plaintiff bases its challenge in part upon its alleged loss of market position due to the challenged tax. Presumably, Plaintiff hopes to regain or improve that position by inducing the Court to strike down the special exemption for small brewers.

The only remaining debate, therefore, concerns whether the state courts of Puerto Rico can correct a violation and offer Plaintiff a remedy if such a correction is made. First, the Court notes that it finds little merit in Plaintiff's repeated assertion that the Puerto Rico court system will somehow improperly apply *stare decisis* to dismiss any case filed by Plaintiff. Plaintiff has not cited a single instance where the Puerto Rico Supreme Court has acted in such a manner and appears to base this assertion on nothing more than its own speculation and fears.

On the contrary, upon a review of the Supreme Court's decision in *Beer Importers*, the Court finds that the Magistrate Judge correctly characterized this opinion from the Supreme Court of Puerto Rico as "pithy" and "in-depth." Indeed, the Justices therein analyzed state precedent, federal precedent, constitutional precedent and Puerto Rico policy in reaching their decisions. (Docket No. 47–2). Further, as noted by the Magistrate Judge, their analysis of the ultimate constitutionality issue in that case closely mirrors the Court's own. (*Id.*) Additionally, the Court finds that Plaintiff's contention that the Puerto Rico state courts will utterly fail to consider legislative history represents a gross mischaracterization, as the *Beer Importers* court explicitly addressed arguments regarding legislators' statements, applying precedent from the Supreme Court of the United States. Further, that court ultimately found, as this Court did, that the statement of purpose outweighed the statements made by a handful of legislators. (*Id.*)

This Court has nothing but the utmost respect for the Puerto Rico state court system and, in particular, the Puerto Rico Supreme Court and will not deny Defendant's request for dismissal based upon such a flimsy and unsupported attack on it.[28] The *Levin* Court specifically quoted

the Court notes that the Twenty First Amendment provides the states with broad power to regulate liquor. *See Granholm v. Heald,* 544 U.S. 460, 488, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005).

**27.** Of course, "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification." *Levin,* 130 S.Ct. at 2333 (quoting *Madden v. Kentucky,* 309

U.S. 83, 88, 60 S.Ct. 406, 84 L.Ed. 590 (1940)).

**28.** The Court finds further support for its conclusion in recent First Circuit jurisprudence, where the Court of Appeals already determined that the state courts of Puerto Rico provide taxpayers with sufficient procedural safeguards to assure the requisite "plain, speedy, and efficient remedy" mandated by

an earlier opinion authored by Justice Breyer to emphasize the "special reasons justifying the policy of federal noninterference with state tax collection." 130 S.Ct. at 2330 n. 2. The Court finds it important to, once again, enunciate these reasons in light of Plaintiff's arguments in opposition to the motion to dismiss.

> State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

*Id.* (quoting *Perez v. Ledesma*, 401 U.S. 82, 128 n. 17, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (opinion concurring in part and dissenting in part)).

Accordingly, the Court finds that abstention for comity reasons is appropriate under *Levin* and shall **ADOPT** the Magistrate Judge's *Report and Recommendation* and **GRANT** Defendant's motion to dismiss Plaintiff's constitutional challenge accordingly. As Plaintiff's other claims require the Court to rule that the challenged legislation is, indeed, unconstitutional, the Court shall also dismiss those claims at this time. The instant action is therefore **DISMISSED WITHOUT PREJUDICE**

the TIA and, by extension, the Butler Act. *See Pleasures of San Patricio, Inc. v. Mendez–Tor-*

so that Plaintiff may pursue its desired remedy within the state court system. The Court understands that the instant decision is appropriate as, in providing Plaintiff with a dismissal without prejudice so that Plaintiff may pursue its desired remedy in the appropriate state court forum. Thus, both parties now retain the ability to develop their legal and factual arguments in full rather than via an early motion for summary judgment. The Court further understands that this outcome satisfies *Levin's* strong favor of a state court forum where state taxes are challenged. *See* 130 S.Ct. at 2330. Moreover, this underscores the Court's deep respect for the Puerto Rico state court system in general, and the Puerto Rico Supreme Court in particular.

## VI. CONCLUSION

For the reasons set forth above, the Court hereby **DENIES** Plaintiff's motion to strike (Docket No. 171). Further, the Court **ADOPTS** the Magistrate Judge's well-reasoned *Report and Recommendation* (Docket No. 167) and therefore **DENIES** Plaintiff's resuscitated motion for summary judgment (Docket No. 96) and **GRANTS** Defendant's motion to dismiss (Docket No. 144). Judgement, therefore, shall be entered accordingly. Further, the Court **FINDS AS MOOT** Defendant's request for relief from stipulations (Docket No. 136).

**IT IS SO ORDERED.**

*MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

JUSTO ARENAS, United States Chief Magistrate Judge.

This matter is before the court on a motion to dismiss filed by defendant Juan

*res*, 596 F.3d 1, 7–8 (1st Cir.2010).

Carlos Méndez–Torres, in his official capacity as the Secretary of the Treasury of the Commonwealth of Puerto Rico ("Secretary"), on July 14, 2010. (Docket No. 144.) Plaintiff filed its opposition to the motion to dismiss on August 11, 2010. (Docket No. 151.) The matter was referred to me for report and recommendation on December 29, 2010. (Docket No. 160.) For the reasons set forth below, I recommend that the defendant's motion to dismiss be GRANTED.

## I. PROCEDURAL HISTORY

The Commonwealth of Puerto Rico has long implemented an excise tax on beer.[1] This tax was initially directed to two categories of brewers, those producing more than 31 million gallons annually ("large brewer tax") and those producing less ("small brewer tax"). (Docket No. 51–2, at 6.) From its inception in 1969 until 2002, the large brewer tax and small brewer tax increased in tandem, and always maintained a $0.55 differential. (*Id.*) This changed in 2002, when Puerto Rico enacted Act No. 69, which increased the "large brewer tax." The 2002 law raised the large brewer tax from $2.70 per gallon to $4.05; the small brewers tax remained at $2.15. P.R. Laws Ann. tit. 13, § 9521(c)(2); P.R. Laws Ann. tit. 13 § 9574(a)(1). The new law also created four[2] gradational steps between 9 million

---

1. The relevant provisions state:
 An internal revenue tax shall be levied, collected and paid at one time on the following products that are in a warehouse or that have been or may be, in the future, distilled, rectified, produced, manufactured, imported or introduced to Puerto Rico at the following rate:
 . . .
 (c) Beer.
 . . .
 (2) On all beers, malt extract and other fermented or unfermented analogous products, whose alcohol content exceeds one and half percent (1 1/2%) per volume, a tax of four dollars and five cents ($4.05) cents shall be paid per each gallon measured and a proportional tax at an equal rate on every fraction of gallon measured, except as provided in § 9574 of this title.
 P.R. Laws Ann. tit. 13, § 9521 (1994), Internal Revenue Code, 1994, added as § 4002 on Sept. 4, 1998, No. 265, § 1; May 30, 2002, Law No. 69, § 1, effective 15 days after May 30, 2002.

2. The cited section provides:
 (a) In lieu of the tax fixed in clauses (2) and (3) of § 9521(c) of this title on all beer, malt extract and other fermented or unfermented analogous products whose alcohol content exceeds one and a half percent (1 1/2%) per volume referred to in clauses (2) and (3) of § 9521(c) of this title, that are produced or manufactured by persons whose total production, if any, of said products during their most recent tax year has not exceed thirty-one million (31,000,000) gallons measure, a tax shall be collected in the following manner:
 (1) Two dollars and fifteen cents ($2.15) per measured gallon produced, up to nine million (9,000,000) measured gallons.
 (2) Two dollars and thirty-six cents ($2.36) per measured gallon produced in quantities greater than nine million (9,000,000) but less than ten million (10,000,000).
 (3) Two dollars and fifty-seven cents ($2.57) per measured gallon produced in quantities greater than ten million (10,000,000) but less than eleven million (11,000,000).
 (4) Two dollars and seventy-eight cents ($2.78) per measured gallon produced in quantities greater than eleven million (11,000,000) but less than twelve million (12,000,000).
 (5) Two dollars and ninety-nine cents ($2.99) per measured gallon produced in quantities greater than twelve million [12,000,000] but less than thirty-one million (31,000,000).
 (b) Subject to the provisions of §§ 9575–9579 of this title, the benefits of this section shall apply for a person in any taxable year following the year in which the total production of the products described in this subsection, if any, has not exceeded thirty-one million (31,000,000) gallons measured.
 (c) The benefits of this section shall also apply to the importers of the products described in this subsection whose producers

and 31 million gallons. P.R. Laws Ann. tit. 13, § 9574(a). Thus, the parity between the highest and lowest categories, $0.55 apart for decades, now increased to a $1.90 differential. Additionally, Puerto Rico crafted a graduated exemption for those companies brewing less than 31 million gallons annually. (Docket No. 54, at 20–21, ¶ 89, citing Docket No. 56, Rec. at 977–981.) This exemption reverted those who brewed less than 31 million gallons to pay the lowest tax rate on their first 9 million gallons, even if total production exceeded 9 million gallons. (*Id.*)

Representing multiple brewers, including the plaintiff, the United States Brewers Association ("USBA") challenged this modified tax regime in the Puerto Rico courts. *U.S. Brewers Ass'n v. Sec'y of the Treasury,* 109 D.P.R. 456, 9 P.R. Offic. Trans. 605 (1980) ("*U.S. Brewers P.R.*"). Although Coors' predecessor[3] was a member of the USBA, the plaintiff did not begin selling beer in Puerto Rico until 1991. (Docket No. 51–2, at 6.) The USBA also filed an action in the United States District Court for the District of Puerto Rico, and upon losing, appealed to the First Circuit. *U.S. Brewers Ass'n v. César Pérez,* 455 F.Supp. 1159 (D.P.R.1978), *remanded,* 592 F.2d 1212 (1st Cir.1979) ("*U.S. Brewers*"), *abrogated by Coors Brewing Co. v. Méndez–Torres,* 562 F.3d 3 (1st Cir.2009), *abrogated by Levin v. Commerce Energy, Inc.,* —— U.S. ——, 130 S.Ct. 2323, 176 L.Ed.2d 1131 (2010). In that action, the USBA raised much the same argument that Coors argued on appeal in this case, namely, "that the Butler Act[4] did not bar federal jurisdiction over

the challenge to the state tax law since the plaintiffs were not seeking to prevent the collection of a tax." *Coors Brewing Co. v. Méndez–Torres,* 562 F.3d at 6. While not relying on the Butler Act on its face, the First Circuit concluded that the action "was barred by 'considerations which underlie [the Tax Injunction Act and] the Butler Act,' namely 'equity practice, ... principles of federalism ... and the imperative need of a State to administer its own fiscal operations.'" *Id.* (quoting *U.S. Brewers Ass'n, Inc. v. Pérez,* 592 F.2d at 1214). The First Circuit remanded the case "to the district court so that it may dismiss the case for want of jurisdiction." *U.S. Brewers Ass'n, Inc. v. Pérez,* 592 F.2d at 1215. "Meanwhile, the Puerto Rico courts rejected the USBA's challenges on the merits." *Coors Brewing Co. v. Méndez–Torres,* 562 F.3d at 7 (citing *U.S. Brewers Ass'n v. Sec'y of the Treasury,* 109 D.P.R. 456, 9 P.R. Offic. Trans. 605 (1980)).

Following the 2002 amendments to the beer tax, the Puerto Rico Association of Beer Importers ("PRABI"), to which Coors was affiliated, filed suit in Puerto Rico Superior Court. *Asoc. Importadores de Cerveza v. E.L.A.,* 171 D.P.R. 140 (2007) ("*Beer Importers*"). Shortly after filing the suit, Coors voluntarily dismissed its claims without prejudice. *Coors Brewing Co. v. Méndez–Torres,* 562 F.3d at 7. The Puerto Rico Superior Court ultimately dismissed the case, and the Puerto Rico Supreme Court upheld said dismissal on appeal. *Id.* (citing *Asoc. Importadores de Cerveza v. E.L.A.,* 171 D.P.R. 140 (2007)).

---

meet the requirements established in subsection (b) of this section.
P.R. Laws Ann. tit. 13, § 9574 (1994), Internal Revenue Code, 1994, added as § 4023 on Sept. 4, 1998, No. 265, § 1; May 30, 2002, No. 69 § 2; May 6, 2004, No. 108, § 1.

**3.** The Adolph Coors Company. *See Coors Brewing Co. v. Méndez–Torres,* 562 F.3d 3, 6 (1st Cir.2009) ("*Coors*"), *abrogated,* —— U.S. ——, 130 S.Ct. 2323, 176 L.Ed.2d 1131 (2010).

**4.** 48 U.S.C. § 872.

Coors filed its own complaint in the same year, challenging the 2002 Amendment to the beer tax in the United States District Court for the District of Columbia. *Coors Brewing Co. v. Calderón*, 225 F.Supp.2d 22, 23 (D.D.C.2002) ("*Calderón*"). The district court dismissed the case on jurisdictional grounds. *Id.* at 25–27. Coors first appealed the ruling, and then settled the case before the appellate court ruled on the case. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 7.

## II. PRESENT CASE

### A. District Court

In 2006, Coors filed the present action in the United States District Court for the District of Puerto Rico, again attacking the beer tax discrepancy. (Docket No. 1.) Coors sought a declaratory judgment finding that the special exemption was invalid and unenforceable, as it violated both Section 3 of the Federal Relations Act, 48 U.S.C. § 741(a), and the Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3. (Docket No. 1, at 3–4, ¶ 11.) The Secretary filed a motion to dismiss with prejudice on January 29, 2007, alleging that this court lacked subject matter jurisdiction under both the Butler Act, 48 U.S.C. § 872, and the Tax Injunction Act, 28 U.S.C. § 1341. (Docket No. 13, at 17.) The Secretary additionally alleged that collateral estoppel and/or claim preclusion prevented the court from deciding the case, as there was ongoing litigation in the Puerto Rico state courts. (Docket No. 13, at 7–13, ¶ III(A).) The

defendant further contended that the stipulations agreed to in the *Calderón* case had a preclusive effect on this court's jurisdiction. (*Id.* at 5.)

The district court then referred the matter to me for report and recommendation. (Docket No. 40.) I filed my report and recommendation on July 13, 2007, recommending that this court dismiss the action. (Docket No. 48, at 1.) The court adopted my recommendation in part, although it decided to dismiss the action on grounds other than those recommended. (Docket No. 77, at 26.) The district court found that the action was barred not by res judicata but by several independent procedural barriers, including the *Rooker–Feldman* doctrine [5], the Butler Act [6], and the preclusive effect of *Calderón* and the resulting stipulations flowing therefrom. The district court ultimately entered judgment dismissing Coors' federal claims with prejudice. (Docket No. 78.)

### B. First Circuit

On appeal, Coors argued that dismissal was improper, and stressed four arguments. First, that this case is not bound by the same factual nexus as the case in *Calderón*. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 9–10. Coors' action in *Calderón* challenged the 2002 Amendments, whereas the case at bar challenged the 2004 Amendments. *Id.* at 10. Second, the plaintiff alleged that an intervening change of law, the United States Supreme Court case *Hibbs v. Winn*, 542 U.S. 88, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004), limited

---

**5.** *See, e.g., Lance v. Dennis*, 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (Rooker–Feldman doctrine confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.") (quoting *Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)); (Docket No. 77, at 8–9.)

**6.** 48 U.S.C. § 872 ("No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico.")

the preclusive effect of the earlier judgment. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 10. Third, the Butler Act was not a bar to its requested relief because it did not seek to decrease the tax it pays, but rather, sought to increase the taxes other companies paid. *Id.* at 13. Finally, that there was not perfect identity of cause between the instant action and *U.S. Brewers, (P.R.),* as the USBA brought that action, which did not include Coors. *Id.* at 20.

### i. *Calderón*

The First Circuit began its review by considering whether any preclusive effect *Calderón* carried in claim preclusion or res judicata. To the court's dismay, "[n]either the district court's opinion nor the parties' arguments on appeal are consistent as to which preclusion doctrine they rely upon." *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 8. To the court, this was a significant omission. *Id.* ("As it turns out, the distinction becomes important in this case.") Dismissal for lack of subject matter jurisdiction does not trigger claim preclusion, but it is fatal for issue preclusion. *See Muñiz Cortes v. Intermedics, Inc.*, 229 F.3d 12, 14 (1st Cir. 2000). Because the *Calderón* court did not decide any of Coors' claims on the merits, the First Circuit concluded "that the preclusive effect of the Calderón judgment must be assessed through the lens of issue preclusion rather than claim preclusion." *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 9.

Having decided that issue preclusion is the correct filter for the Calderón stipulations, the court addressed Coors' two arguments against preclusion. First, Coors argued that the 2004 amendments to the beer excise tax, discussed above, contained a different factual predicate than the *Cal-*

*derón* action, which attacked the 2002 beer excise tax. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 9–10. The court determined that the 2004 amendments were "immaterial" as to Coors' subject matter jurisdiction arguments, and thus irrelevant. Because "[a]n immaterial change is not sufficient to defeat issue preclusion[,]" the court would not follow Coors' lead. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 10.

### ii. *Hibbs*

Next, the plaintiff-appellant argued that there was an intervening change in controlling law, i.e., the United States Supreme Court case *Hibbs v. Winn*. *Hibbs v. Winn*, 542 U.S. 88, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004). The court's analysis of *Hibbs* is crucial to subsequent appeal to the Supreme Court.[7] The First Circuit disagreed with the district court's conclusion on the *Calderón* stipulations, "that the decision of the jurisdiction issue … precluded consideration of that issue in this suit[,]" and continued its analysis. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 12.

Having determined that *Hibbs* precluded any jurisdictional bar, the court addressed the effect of the stipulations in *Calderón*. The court did not accept the district court's position that Coors is barred from relitigating the issues because of its stipulation to the *Calderón* action's dismissal. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 12–13. It found that "[t]he stipulation is not a settlement agreement[,]" and that "Coors did not promise never to bring another suit." *Id.* at 12. All that Coors stipulated to was withholding any *additional* litigation *in that case.* Thus, the court concluded "that neither the *Calderón* stipulation nor judgment is a bar to this action." *Id.* at 13. Having decided

---

**7.** Discussed at length below at 194–95.

that there was no jurisdictional bar to hearing the case, the court moved on to the substantive issues.

### iii. *Beer Importers*

The court also considered whether the "Rooker–Feldman doctrine" served to bar this case based upon the Puerto Rico state court decision in *U.S. Brewers (P.R.). Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 19. But because "Coors was not a party to the action in *U.S. Brewers (P.R.)*," and because "Coors is not attacking the state court judgment, but simply seeking to raise a challenge to the same exemption previously upheld in *U.S. Brewers (P.R.)[,]* " the court rejected the applicability of the "Rooker–Feldman doctrine." *Id.* The First Circuit then went on to conclude that because Coors was not a party in *U.S. Brewers (P.R.)*, it "conclude[d] that the prior judgment . . . does not provide a basis for granting the Secretary's motion to dismiss." *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 21. The court premised its position on not having sufficient evidence to conclude that Coors' predecessor approved their trade association USBA to represent its interests. *Id.* For similar reasons, the court found that *Beer Importers* did not preclude the case. *Id.* at 22 ("the Secretary has failed to meet his burden of showing sufficient privity between Coors and [its exclusive distributor in Puerto Rico]").

### iv. The Butler Act

■■■■ Having found that neither res judicata nor issue preclusion barred relitigation in this case, the court next considered the issue of subject matter jurisdiction itself. Specifically, the court addressed whether Coors had a claim under the Butler Act. The Butler Act prevents a party, attempting to restrain the collection of taxes, from seeking relief in the United States District Court for the District of Puerto Rico. Coors argued on appeal that since it did not seek to decrease its own taxes,[8] the Butler Act was no bar to its requested relief. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 13. The court then juxtaposed this case with the *Hibbs* case. Through its twin analysis of the Tax Injunction Act ("TIA") and the Butler Act[9], the court followed the *Hibbs* Court's lead and distinguished the case. Because the plaintiff was not trying to reduce its tax obligations, but rather was trying to invalidate a distinction in the law providing tax breaks to competitors, it served to *raise* taxes. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 14. The court concluded: "Thus, this case is more like *Hibbs* than *Hill*[10]; rather than eliminate a potential source of revenue, the relief Coors requests would simply eliminate a tax law affording preferential tax treatment to certain taxpayers. Accordingly, we conclude that under *Hibbs*, Coors's action is not barred by the Butler Act." *Id.* at 16.

### v. Comity

Finally, the court considered the issue of comity. The Secretary contended that the principles of comity barred Coors' action. *Coors Brewing Co. v. Méndez–Torres*, 562

---

**8.** Claims under the Tax Injunction Act are barred if such "relief that would diminish state revenues, even if such relief is the remedy least disruptive of the state legislature's design." *Levin v. Commerce Energy, Inc.*, 130 S.Ct. at 2334.

**9.** The Butler Act and the Tax Injunction Act "have been construed *in pari materia.*" *Pleasures of San Patricio, Inc. v. Méndez–Torres*, 596 F.3d 1, 5 (1st Cir.2010) (quoting *United Parcel Serv., Inc. v. Flores–Galarza*, 318 F.3d 323, 330 n. 11 (1st Cir.2003)).

**10.** Discussed below at 194–95, ¶ V(A).

F.3d at 16. In support, the defendant relies on *U.S. Brewers*. That court concluded that principles of comity "would be 'ill-served' by the 'technical distinction' between restraining the imposition of a lower rate on small brewers and a direct challenge to plaintiffs' higher rate." *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 16 (quoting *U.S. Brewers Ass'n, Inc. v. Pérez*, 592 F.2d at 1214–15). Standing alone, the court's decision in *U.S. Brewers* would control; but the court wrestled with what effect, if any, *Hibbs* had on the precedent. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 16.

The court considered the circuit split on the effect of a footnote in *Hibbs*. The footnote read: "[T]his Court has relied upon 'principles of comity,' ... to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection." *Hibbs v. Winn*, 542 U.S. at 107 n. 9, 124 S.Ct. 2276. Several circuits had, in light of *Hibbs*, determined that scope of the comity bar had been limited. Based on the above footnote, these circuits concluded that "comity does not bar federal courts from hearing suits seeking to invalidate state tax laws that afford preferential tax treatment to third parties where such challenge would not arrest state revenue generation." *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 18. In other words, these circuits took the confluence of factors in *Hibbs*, discussed below at 194–95, and crafted a general principle out of it. Other circuits did not read the *Hibbs* footnote in this light. They continued to cite the First Circuit case *U.S. Brewers* even after *Hibbs*. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 17. Because the *Hibbs* Court itself cited *U.S. Brewers*, recognizing that *U.S. Brewers* was not based on the Butler Act, but on principles of comity, and quoted *U.S. Brewers'* admonition against ordering a state to collect a tax not authorized by its legislature, they believed *U.S. Brewers* still controlled. For example "the Fourth Circuit has relied on *U.S. Brewers*, even after *Hibbs*, to refuse jurisdiction over a challenge to a state tax regime's allegedly preferential treatment." *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 17 (citing *DIRECTV, Inc. v. Tolson*, 513 F.3d 119, 126–28 (4th Cir.2008)).

The First Circuit chose not to follow what other circuits had perceived as a guide post, a footnote in *Hibbs* that quoted *U.S. Brewers*. The court rejected the Fourth Circuit's belief that the footnote implicitly condoned the result in *U.S. Brewers*. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 17. Rather, the court "read the [Supreme] Court's citation to *U.S. Brewers* simply as an acknowledgment of a related case, and not as an endorsement of its result." *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 17–18. The court drew strength from a Sixth Circuit case, *Commerce Energy v. Levin*, 554 F.3d 1094 (6th Cir.), *cert. granted,* —— U.S. ——, 130 S.Ct. 496, 175 L.Ed.2d 344 (2009), *rev'd and remanded,* —— U.S. ——, 130 S.Ct. 2323, 176 L.Ed.2d 1131 (2010), that it felt supported their conclusion. *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 18. The First Circuit thus ruled that *U.S. Brewers* was no longer good law, and found that "*Hibbs* effected a change in the law such that neither the Butler Act nor related principles of comity serve to bar Coors's complaint." *Id.* In other words, the court felt that *Hibbs* created a new avenue to federal jurisdiction under the TIA when a party seeks to invalidate a state statute that would have the net effect of raising taxes. The First Circuit thus joined the Sixth, Seventh and Ninth Circuits in holding that *Hibbs* sharply limited the scope of the comity bar. The First Circuit "remanded [the case] for further proceedings consistent with [its] opinion."

*Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 23.

## C. Remand

Following remand, the parties began to prepare for trial once more. The plaintiff filed the joint status report on December 23, 2009. (Docket No. 121.) Several of the provisions were directed to a pending summary judgment motion. (Docket No. 21, at 2–3, ¶¶ 4–5, ¶¶ 9–13.) In particular, paragraph thirteen provides that "[t]he parties have agreed to hold all other proceedings in abeyance until the Court rules on the Motion for Summary Judgment." (*Id.* at 3, ¶ 13.) The motion in question is Coors' motion for summary judgment, Docket No. 96, filed on June 26, 2009, renewing the previous motion submitted to the district court, Docket No. 51. Coors raised issues in these motions not considered by this court in its ruling.

The defendant filed a motion to be relieved from the discovery agreement. (Docket No. 136.) The Secretary alleged that Coors "breached its prior agreement on discovering all data related to the privity issue." (Docket No. 136, at 2, ¶ 3.) The defendant asked that the court "set aside the previously agreed to limitation of discovery[,]" and allow the Secretary "to conduct full discovery on the issues of privity and market share[.]" (Docket No. 136, at 5, ¶ 9.) This court was "inclined" to grant the request, but compelled Coors to first file a response. (Docket No. 138.) The plaintiff did so, filing its opposition on March 22, 2010. (Docket No. 139.)

## D. *Levin v. Commerce Energy, Inc.*

These issues went unresolved however. On June 1, 2010, the United States Supreme Court handed down *Levin v. Commerce Energy, Inc.*, which expressly abrogated the First Circuit's holding on appeal. *Levin v. Commerce Energy, Inc.*, 130 S.Ct.

at 2330 ("*Levin*"). The *Levin* decision reexamined the interplay between comity and the Supreme Court's prior decision in *Hibbs*, discussed below at 194–95. The Supreme Court held:

> We have had no prior occasion to consider, under the comity doctrine, a taxpayer's complaint about allegedly discriminatory state taxation framed as a request to increase a competitor's tax burden. Now squarely presented with the question, we hold that comity precludes the exercise of original federal-court jurisdiction in cases of the kind presented here.

*Levin v. Commerce Energy, Inc.*, 130 S.Ct. at 2332–33.

The Supreme Court went on to explain that comity is "[m]ore embracive than the TIA," as states use taxation to sustain their systems of government, and therefore restrains the federal courts from hearing cases that might "risk disrupting state tax administration." *Id.* at 2328. The Court couched its decision upon the notion that federal courts are ill-equipped to remedy an unconstitutional state tax scheme. *Id.* at 2334. Even where judicial interference would result in *increasing* state tax revenues, the Supreme Court urged restraint. Failing to heed would result in solutions considerably deviated "from what the [state legislature] would have willed." *Id.* at 2335. Because state courts are not bound by the TIA, they are better suited to craft a tax scheme, and may be "more familiar with state legislative preferences." *Id.* at 2336.

■ Thus, the *Levin* decision resolved the circuit split. The Supreme Court resolved the footnote interpretation,[11] clarifying that comity is more expansive that the *Hibbs* footnote suggested. *Id.* at 2335–36.

---

11. See below at 195.

The decision in *Hibbs* did not "recast the comity doctrine"; rather, it was a "confluence of factors" that were sufficient in the aggregate to overcome comity's constraints, and allow plaintiff a federal forum. *Levin v. Commerce Energy, Inc.*, 130 S.Ct. at 2335–36. The holding in *Levin* is therefore that, absent some combination of factors [12] that would justify a federal forum, comity generally dictates that challenges to state tax schemes belong in state court. *Id.* at 2336.

### E. Current

On remand, the Secretary filed a motion to dismiss on July 14, 2010, in light of the *Levin* holding. (Docket No. 144, at 3.) The defendant further argued that *Levin* now invoked *stare decisis* and *law of the case*, which preclude inconsistent rulings. (*Id.* at 11–14, ¶ 4.)

Coors filed its response in opposition on August 11, 2010. (Docket No. 151.) The plaintiff argued that the stipulations the parties agreed to, Docket No. 121, preclude this court from ruling on the Secretary's motion to dismiss until the summary judgment motion is adjudicated. (Docket No. 151, at 5–6, ¶ III(A)). Specifically, paragraph thirteen of the stipulation, requires both parties to withhold any additional action until the pending renewed motion for summary was decided, and at present undecided. (*Id.*) Coors further alleges that there is no legal or equitable basis for dismissing this lawsuit. (*Id.* at 6–9.) The plaintiff points to the joint status report as evidence that "Defendant has voluntarily chosen to submit the resolution of the merits of Coors' claims to this Court." (Docket No. 151, at 7.) Coors claims that it would not have an adequate method of redress in the Puerto Rico courts, saying that any hearing on the

matter would amount to a "preprinted rejection slip." (*Id.* at 11.)

### III. Stipulations

A gateway issue on remand concerns the validity of the stipulation entered into by the parties. (Docket No. 121.) The plaintiff alleges that the terms of the provision preclude this court from ruling on the Secretary's motion to dismiss. (Docket No. 151, at 5–6, ¶ III(A).) Specifically invoked is the provision stating "[t]he parties have agreed to hold all other proceedings in abeyance until the Court rules on the Motion for Summary Judgment." (Docket No. 121, at 3, ¶ 13.) The plaintiff filed the referenced summary judgment motion on June 26, 2009, shortly after the First Circuit remanded the case, and which motion remains undecided. (Docket No. 96.) The defendant does not respond to this argument in detail, claiming that "plaintiff's request … to take notice of Documents 121, 136 and 139 is a camouflaged attempt to resubmit its request for leave to file excess number of pages regarding its opposition to defendant's motion to dismiss." (Docket No. 162, at 2, ¶ 2.)

That is not all plaintiff's request seeks to accomplish. Plaintiff wishes that the defendant be "bound by his commitments and this Court's order." (Docket No. 151, at 6, ¶ III(A).) That the Supreme Court issued a ruling favorable to the Secretary does not exonerate him of his commitments under the joint agreement. If the agreement is determined to be binding, it has the effect of precluding this court from ruling on the defendant's motion until the prior motion for summary judgment is adjudicated.

 "Stipulations 'eliminate the need for proving essentially uncontested facts,' thus husbanding scarce judicial re-

---

12. See below at 194–95.

sources." *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 5 (1st Cir. 2007) (quoting *Gómez v. Rivera Rodríguez*, 344 F.3d 103, 120 (1st Cir.2003)). "It is apodictic that [they] should be read with an eye toward effectuating the parties' manifested intentions." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453, 462 (1st Cir.1992.) (citing *Washington Hosp. v. White*, 889 F.2d 1294, 1299 (3d Cir.1989)). Stipulations entered into with clean hands are given due deference. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *see also Stafford v. Crane*, 382 F.3d 1175, 1180 (10th Cir.2004) (court is "reluctant to relieve parties from the benefits, or detriments of their stipulations"); *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir.1998) ("[i]t is a well-recognized rule of law that valid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside"). Absent a justifiable reason to extricate from the contract, discussed below, a party may only do so when manifest injustice is the likely outcome. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d at 928; *Waldorf v. Shuta*, 142 F.3d at 617–18 (discussing factors other courts have used in determining manifest injustice, include "effect of the stipulation on the party seeking to withdraw," "the effect on the other parties," "the occurrence of intervening events since the parties agreed to the stipulation," and "whether evidence contrary to the stipulation is substantial") (citations omitted).

 Stipulations generally consider either questions of fact or questions of law. Questions of fact are generally abided by courts. *See Gander v. Livoti*, 250 F.3d 606, 609 (8th Cir.2001) ("stipulations by the parties regarding questions of fact are con-

clusive"); *TI Fed. Credit Union v. DelBonis*, 72 F.3d at 928 (quoting *Saviano v. Comm'r of Internal Revenue*, 765 F.2d 643, 645 (7th Cir.1985)) ("parties to a lawsuit are free to stipulate to factual matters"). Questions of law, however, belong to the court's discretion. *Gander v. Livoti*, 250 F.3d at 609; *TI Fed. Credit Union v. DelBonis*, 72 F.3d at 928.

The joint stipulations must be considered through this framework. The parties entered into the agreement, and it is evident on its face that the joint status report was made with the pending summary judgment motion in mind. A full seven of the fourteen [13] provisions consider summary judgment, among them, considerations for the Secretary's opposition, a reply and a surreply. (Docket No. 121, at 3, ¶ 9–10.) Though the Secretary almost immediately sought relief from the stipulations, Docket No. 136, and the court was "inclined" to grant relief, Docket No. 138, the matter remained unadjudicated. Nor did the defendant attempt to invalidate the stipulations as a challenge to the motion for summary judgment. As this was after the First Circuit remanded the case, and before the Supreme Court abrogated its ruling, the plaintiff had the upper hand. And though the defendant could not have reasonably expected the Supreme Court to intervene, he must consider both sides of the double-edged sword before agreeing to stipulations. The Secretary did not object to the stipulations at any great length. Nor will the defendant suffer any manifest injustice from having the summary judgment motion decided first.

For those reasons, I recommend the court bind the defendant to the stipulations the parties agreed to in their joint status response. I further recommend

**13.** Though there are thirteen paragraphs, there are two paragraph fours. (Docket No. 121, at 2.)

that the pending motion for summary judgment be adjudicated before considering the pending motion to dismiss.

### IV. Summary Judgment

██ The plaintiff renewed its motion for summary judgment on June 26, 2009. (Docket No. 96.) Coors filed its initial motion on July 30, 2007. (Docket No. 51.) The defendant did not file a motion in opposition. In addition to reiterating its previous arguments, discussed *supra*, Coors makes the additional argument that the First Circuit's reversal of June 3, 2009 carries weight in this case. As the Supreme Court expressly abrogated the First Circuit's ruling in *Levin*, this argument is moot.

### A. Factual Background

Puerto Rico has allegedly been protecting the local beer industry for decades. Facially, the plaintiff submits that the legislative record evidences a clear intent to protect Puerto Rico's sole brewing company, Cervecería India. Coors points to several instances of legislative, judicial and executive comments that the state of the local beer industry was such that "[t]he local beer industry [was] ... being displaced by imported beer." (Docket No. 51–2, at 20, quoting Docket No. 54, at 2, ¶ 5.) The $.55 tax differential that separated "large" and "small" brewers was "patently discriminatory." (Docket No. 51–2, at 21.)

When this initial bifurcated tax system failed as a "sufficient competitive advantage for local brewers[,]" Puerto Rico allegedly stepped in again. (Docket No. 51–2, at 21.) In spite of the protections already afforded it, Cervecería India continued to lose market share. (*Id.*) Coors asserts that the 2002 Amendments to Law No. 37 were the result of aggressive lobbying efforts by Cervecería India. (*Id.*) The 2002 Amendments had the effect of raising the differential between the lowest and highest tax classifications from $.55 to $1.90, an increase in excess of 345%. Again, the plaintiff points to the legislative record as confirmation "that the 2002 amendments were motivated by a desire to insulate Cervecería India from the rigors of interstate competition." (Docket No. 51–2, at 22.)

Coors also submits that the 2004 Amendments are purposefully discriminatory against off-island brewers. (Docket No. 51–2, at 22–23.) Until 2004, only two of the sixteen beer manufacturers in the Puerto Rico market produced less than nine million gallons annually, one of which was Cervecería India. However, as a result of Cervecería India's strong growth in FY 2003, production increased to more than 9 million gallons. (Docket No. 54, at 20, ¶ 85.) This would result in a considerable tax increase for the company. As written, Law No. 37 and its 2002 Amendment did not allow for a graduated tax increase, instead requiring that a producer falling into whichever category had to pay tax on the entirety of that amount.

Coors concludes that "the legislative record is replete with statements by key legislators, lobbyists, and politicians that prove the Special Exemption was crafted in order to shield Cervecería India from interstate competition." (Docket No. 51–2, at 23.) "That the legislature strategically included a neutral 'official statement of purpose' in the statute does not change this result." (*Id.*) Coors concludes that "[a] pretextual official statement of purpose cannot shield the Commonwealth from the natural consequences of its unconstitutional actions." (*Id.* at 25.)

As mentioned, the Secretary did not file a response in opposition to either the initial motion for summary judgment, Docket

No. 51, or the renewed motion for summary judgment, Docket No. 96.

### B. Standard of Review

 Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a)[14]; *Meléndez v. Autogermana, Inc.*, 622 F.3d 46, 49 (1st Cir.2010). The intention of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the non-moving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000) (quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997)); *Cruz–Claudio v. García Trucking Serv., Inc.*, 639 F.Supp.2d 198, 203 (D.P.R.2009.)

 "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Carroll v. Xerox Corp.*, 294 F.3d 231, 236–37 (1st Cir.2002) (quoting *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir.1996)) (" '[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.")

An issue is "genuine" if the evidence of record permits a rationale factfinder to resolve it in favor of either party. *See Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). A fact is "material" if its existence or non-existence has the potential to change the outcome of the suit. *See Martínez v. Colón*, 54 F.3d 980, 984 (1st Cir.1995). *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 5–6 (1st Cir.2010).

 The nonmoving party must produce "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)); *see also López–Carrasquillo v. Rubianes*, 230 F.3d 409, 413 (1st Cir.2000); *Amira–Jabbar v. Travel Servs., Inc.*, 726 F.Supp.2d 77, 84 (D.P.R.2010).

### C. Discussion[15]

 Our Constitution "was framed upon the theory that the peoples of the several states must sink or swim together." Thus, this Court has consistently held that the Constitution's express grant to Congress of the power to "regulate Commerce ... among the several States," contains "a further, negative command, known as the dormant Commerce Clause," that "create[s] an area of

---

**14.** "Rule 56 was amended, effective December 1, 2010. The standard for granting summary judgment now appears in subsection (a), but remains substantively the same." *Del Toro Pacheco v. Pereira*, 633 F.3d 57, 62 n. 6 (1st Cir.2011) (citing Fed.R.Civ.P. 56 advisory committee's note).

**15.** As an initial aside, the dormant Commerce Clause equally applies to Puerto Rico. *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 142 (1st Cir.2001).

trade free from interference by the States." This negative command prevents a State from "jeopardizing the welfare of the Nation as a whole" by "plac[ing] burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear."

*Am. Trucking Ass'ns, Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 429, 433, 125 S.Ct. 2419, 162 L.Ed.2d 407 (2005) (internal citations omitted).

■■■ "The dormant Commerce Clause sets two complementary boundaries for states' regulatory powers over commerce. On one hand, states cannot interfere with Congress's constitutional authority over interstate commerce by enacting laws that seriously impede interstate commerce, even when Congress has not acted." *IMS Health Inc. v. Mills*, 616 F.3d 7, 27 (1st Cir.2010) ·(citing *Dep't of Revenue v. Davis*, 553 U.S. 328, 337–38, 128 S.Ct. 1801, 170 L.Ed.2d 685 (2008)). "On the other hand, states 'retain authority under their general police powers to regulate matters of legitimate local concern, even though interstate commerce may be affected.' " *Id.* (quoting *Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986)). "Further, in fields traditionally subject to state regulation, federal courts 'should be particularly hesitant to interfere with [states'] efforts under the guise of the Commerce Clause." *Id.* (quoting *United Haulers Ass'n, Inc. v. Oneida–Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 344, 127 S.Ct. 1786, 167 L.Ed.2d 655 (2007)).

■■■ "Heightened scrutiny applies when a law 'discriminates against interstate commerce' in purpose or effect." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 107 (3d Cir.2011) (quoting *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994)). Coors alleges

that Law No. 37 and its amended progeny violate the Commerce Clause facially and in effect. "An assertion that the Commerce Clause invalidates a particular statutory scheme presents a facial challenge to that statute.". *IMS Health Inc. v. Ayotte*, 550 F.3d 42, 63 (1st Cir.2008) (citing *United States v. Nascimento*, 491 F.3d 25, 41 (1st Cir.2007) (distinguishing facial and as-applied Commerce Clause challenges to federal law)). "[I]n evaluating a facial challenge to a state law, a federal court must … consider any limiting construction that a state court or enforcement agency has proffered." *Id.* (quoting *McGuire v. Reilly*, 386 F.3d 45, 58 (1st Cir.2004)). Whenever possible, "state statutes should be presumed to govern only conduct within the borders of the enacting state[,]" and "[these] statutes should be given a constitutional as opposed to an arguably unconstitutional interpretation whenever fairly possible." *Id.* (citations omitted).

■■■ The dormant Commerce Clause applies to alcohol shipments as well. *Freeman v. Corzine*, 629 F.3d 146, 158 (3d Cir.2010). "'[U]nless the state 'show[s] that the "discrimination is demonstrably justified," ' statutes regulating alcohol that discriminate against interstate commerce must be invalidated." *Id.* (quoting *Granholm v. Heald*, 544 U.S. 460, 492, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005)). "State policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent." *Freeman v. Corzine*, 629 F.3d at 158 (citing *Granholm v. Heald*, 544 U.S. at 489, 125 S.Ct. 1885); *cf. Family Winemakers of Cal. v. Jenkins*, 592 F.3d 1, 5 (1st Cir.2010).

### D. Analysis

#### i. Facial Discrimination

■■■ Coors alleges that the special exemption statutes are facially ·discriminato-

ry. The plaintiff attempts to amalgamate the two pillars of statutory discrimination, facial discrimination and discriminatory effect. (Docket No. 51–2, at 19.) Coors asserts that a "legion" of cases establishes that "a purposefully discriminatory law is unconstitutional whether it expressly declares the intent to favor local business at the expense of out-of-state competitors or 'aspire[s]' to reap some of the benefits of tariffs by other means.'" (*Id.*) Another term of this definition is "discriminatory intent," and is addressed below. For a statute to be facially discriminatory, that discrimination must be contained in the language of the statute. The statute states in its relevant section:

> (c) The benefits of this section shall also apply to the importers of the products described in this subsection whose producers meet the requirements established in subsection (b) of this section.

P.R. Laws Ann. tit. 13, § 9574(c).

As the prescribed methods of categorizing the beer companies all relate to beer *production,* and not place of origin, it cannot be successfully argued that the statute is facially discriminatory. Thus, I consider whether any evidence of discriminatory intent exists.

### ii. Discriminatory Intent

The plaintiff also alleges that the respective statutes were crafted with a discriminatory intent in mind, namely the protection of the local beer industry. Coors offers two arguments: first, that the legislative history surrounding the inception of Law No. 39 illustrates that the driving reason for said statute was the protection of Cervecería India; second, that the effect caused by the statute evidences a discriminatory effect in favor of local brewers. (Docket No. 51–2, at 20, 28.) The latter argument is allegedly supported by the market data before and after the passage of the statutes.

To prevail on an argument of discriminatory intent and/or effect, Coors must show that the challenged state statute has extraterritorial effects that adversely affect economic production (and hence interstate commerce) in other states, thereby forcing "producers or consumers in other States [to] surrender whatever competitive advantages they may possess." *Brown–Forman Distillers Corp. v. N.Y. State Liquor Auth.,* 476 U.S. 573, 580, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986) (citing *Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 528, 55 S.Ct. 497, 79 L.Ed. 1032 (1935); *Schwegmann Bros. Giant Super Mkt. v. La. Milk Comm'n,* 365 F.Supp. 1144 (M.La.1973)); *see Grant's Dairy–Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.,* 232 F.3d 8, 19 (1st Cir.2000); *cf. Family Winemakers of Cal. v. Jenkins,* 592 F.3d at 5. A statute's intent can be inferred from the statutory language and its statement of purpose. The relevant portion of the statute's statement of motives reads:

> The tax measures established through this Act should not affect other areas of the economic basis of our Island. Thus, in the case of beer, the mechanism approved by the Supreme Court of Puerto Rico in *U.S. Brewers Association v. Secretario de Hacienda,* 109 D.P.R. 456 (1980) is used to guarantee that industries of less production may continue their operation without any alteration. In those cases, as their productive capacity increases, and as a result thereof, its financial stability, their responsibility before the public treasure shall also gradually increase. **In view of this, it is the public policy of the Commonwealth to promote that small industries that produce beer do not suffer the burden of the new tax until their annual production and financial capacity justify it.**

Act No. 69, H.B. 2244 (Conference) of the 14th Session of the 1st Legislature of Puerto Rico (Approved May 30, 2002), http://www.oslpr.org/download/en/2002/0069.pdf (emphasis added); P.R. Laws Ann. tit. 13, § 9521 (2007).

The statute and its progeny were designed to protect small businesses from the potentially debilitating effect of steep excise taxes. The Puerto Rico legislature delineated "large brewer" category as such because it felt that brewers of that magnitude could afford the tax. The "classes" created here are of production level and, indirectly, revenue generated. The classes are *not* those producing beer inside or outside of Puerto Rico. The Puerto Rico legislature's conduct did not rise to the level of "discriminatory intent" in crafting the statutory exemptions.

### iii. Legislative History

Coors asserts that the beer excise tax "was motivated by the 'reality' that 'imported beer in the last years ha[d] been substituting the locally produced beer' and that this trend had led to a 'crisis' in which '[t]he local beer industry [was] ... being displaced by imported beer." (Docket No. 51–2, at 20, quoting Docket No. 54, at 2, ¶ 5.) Cervecería India, reeling from three consecutive years of net losses, could not weather higher taxes. Politicians bemoaned the potential loss of jobs in Puerto Rico. Additionally, significant lobbying efforts on the part of Cervecería India led to the 2004 amendment.

> It is entirely a different matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it. What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.

*United States v. O'Brien,* 391 U.S. 367, 384, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *see also Torres v. Delgado,* 510 F.2d 1182, 1183 (1st Cir.1975).

While it is true that for at least some of the legislature, protection for Cervecería India was an express rationale for passing the 2002 and 2004 Amendments, Coors lists only a handful of cases. They do not represent the entire legislature. And while the legislation's supporters may have believed that local benefits would flow from passage, this was at most an incidental purpose that does not justify the heightened scrutiny that must be given to discriminatory legislation under the dormant Commerce Clause. *See Alliance of Auto. Mfrs. v. Gwadosky,* 430 F.3d 30, 39 (1st Cir.2005) (recognizing that incidental discriminatory purpose does not warrant strict scrutiny under the dormant Commerce Clause); *Wine & Spirits Retailers, Inc. v. Rhode Island,* 481 F.3d 1, 10–11 (1st Cir.2007); *cf. Family Winemakers of Cal. v. Jenkins,* 592 F.3d at 13. Puerto Rico has not shifted the costs of doing business on to other states whose voters cannot affect its legislative choices, nor does the law "hand local businesses a victory they could not obtain through the political process." *United Haulers Ass'n, Inc. v. Oneida–Herkimer Solid Waste Mgmt. Auth.,* 550 U.S. at 345, 127 S.Ct. 1786. "[Puerto Rico's] political process produced this statute, and [Puerto Rico] voters can, if they disagree, reverse this policy." *IMS Health Inc. v. Mills,* 616 F.3d at 29.

### iv. Discriminatory Effect

Failing to highlight facial discrimination or discriminatory intent, Coors may still obtain relief if it can prove evidence of a discriminatory effect of the statute. The plaintiff relies on market data for its assertion, highlighting the change in market share amongst the brewers doing business

in Puerto Rico, changes it attributes to the increased taxes. Coors then juxtaposes the market share fluctuations of Puerto Rico at large with sales of beer on military installations in Puerto Rico. Even though Cervecería India had significant growth in Puerto Rico, at the expense of competitor's market share, sales at military installations, where the tax has never taken effect, have remained roughly the same. (Docket No. 54, at 23, ¶ 100.) The plaintiff relies on the United States Supreme Court case *Bacchus Imports* in support. *Bacchus Imps., Ltd. v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) ("*Bacchus*").

At issue in *Bacchus* was an excise tax enacted by Hawaii that exempted certain alcoholic beverages produced in that state. The exemption was for Hawaiian okolehao, a brandy distilled from an indigenous Hawaiian shrub, and pineapple wine, the only fruit wine manufactured in Hawaii during the relevant time, from its 20% excise tax on liquor at wholesale. *Bacchus Imps., Ltd. v. Dias*, 468 U.S. at 265, 104 S.Ct. 3049. Appellants, liquor wholesalers, initiated protest proceedings after paying the taxes, and sought refunds for the entirety of their liquor tax liabilities for the relevant years. *Id.* at 266, 104 S.Ct. 3049. The Supreme Court rejected Hawaii's Commerce Clause and Twenty-first Amendments defenses, and found the excise tax was facially discriminatory. *Id.* at 274–76, 104 S.Ct. 3049. The Court also held that the exemption had both the purpose and effect of discriminating in favor of local products. The Court further dismissed Hawaii's claim that helping "struggling" instate industries was an adequate basis for its economic protectionism. *Id.* at 272–73, 104 S.Ct. 3049; *cf. Family Winemakers of Cal. v. Jenkins*, 592 F.3d

at 9 n. 7. This purpose, to assist in-state industry, was "sufficient to demonstrate the state's lack of entitlement to more flexible approach permitting inquiry" into the *Pike*[16] analysis, weighing the burdens and benefits on interstate commerce. *Bacchus Imps., Ltd. v. Dias*, 468 U.S. at 270, 104 S.Ct. 3049.

Coors would like this court to find a parallel between Hawaii's statute and the Puerto Rico statute. I believe that the court should decline such invitation. First, the Hawaiian statute in question protected the Hawaiian liquor industry *exclusively* by exempting several beverages produced only in Hawaii, including a nonexistent pineapple wine. *Id.* at 272, 104 S.Ct. 3049. The statute in this case seeks only to ensure that companies classified as "small brewers," from whatever state, are shielded from what Puerto Rico considers a potentially crushing tax liability. P.R. Law No. 69. As the Puerto Rico Supreme Court correctly notes, this act of classifying in accordance with production levels achieves the purpose of "establish[ing] a system of scaled exemptions that would allow each company's tax liability to increase slowly as its economic stability grew." *Asoc. Importadores de Cerveza v. E.L.A.*, 171 D.P.R. at 168, P.R. Offic. Trans. 92, at 17 (2007). According to Coors' own figures, Cervecería India's production was forecast to increase to nearly 14,000,000 gallons in 2007, which would put it in the second-highest tax bracket under section 9574. (Docket No. 54, at 21–22, ¶¶ 91–92.)

In sum, a reasonable fact-finder could not conclude on this record that either section 9521 or section 9574 has a substantial discriminatory effect by illustrating that any effect of these acts discriminates

**16.** *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

against out-of-state businesses while specifically exempting local businesses, in one way or another. Indeed, the fact that brewers from other states have qualified for the exemption, and still can, only further demonstrates the lack of discrimination. Any out-of-state beer producers who brew 14,000,000 gallons of beer and wish to distribute in Puerto Rico would join Cervecería India in paying the tax at the same rate. There is no evidence of discriminatory impact.

### v. Excessive Burden

In a footnote, Coors "reserves the right later to seek summary judgment on the ground that, under the standard set forth in *Pike*, the purported local benefits of the Special Exemption are clearly outweighed by the burdens it imposes on out-of-state brewers." (Docket No. 51–2, at 16 n. 2.) As excessive burden is the next step in the discrimination calculus, I will address this issue now.

▇▇▇ Legislation "burdens commerce in a way that is 'clearly excessive in relation to the putative local benefits' to be derived therefrom." *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28, 33 (1st Cir.2007) (quoting *Wine & Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d at 11) (quoting *Pike v. Bruce Church*, 397 U.S. at 142, 90 S.Ct. 844). Under the *Pike* "balancing test," "[l]aws that regulate evenhandedly and only incidentally burden commerce are subjected to less searching scrutiny," *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d at 33, and should be upheld unless their imposition on commerce "clearly outweigh[s]" their state or local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. at 142, 90 S.Ct. 844; see *IMS Health Inc. v. Mills*, 616 F.3d at 42 n. 51. "If a legitimate local purpose is found, then the question becomes one of degree ... the extent of the burden that will be tolerated will ... depend on the nature of

the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Pike v. Bruce Church, Inc.*, 397 U.S. at 142, 90 S.Ct. 844.

Thus, we must place the "putative benefits" on one side of the scales, and the "burden to interstate commerce" on the other. Only when burden registers as "clearly excessive" do we challenge the regulation. *See Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 312 (1st Cir.2005). As stated, the statutes were amended to provide a graduated tax liability to companies as their business production grew. The tax itself generated in excess of ten million dollars in revenue. A "flat-tax" at the highest rate could either depress production or put small businesses out of the Puerto Rico market altogether. The burden would presumably be that businesses might lower the volume of business done in Puerto Rico, or leave the market altogether. However, no evidence of any major beer manufacturers doing either is proffered. Beer production volume has increased in Puerto Rico from 2003 to 2006, evidencing no desire to exit the Puerto Rico market. (Docket No. 54, at 22, ¶ 96.)

▇▇▇ The balancing of benefits and burdens of the tax statutory scheme decisively favors the former. Construing the evidence in the light most favorable to the Secretary, the record at best suggests an uncertain amount of lost revenue to large brewers. A claim under the dormant Commerce Clause cannot be based solely upon a showing that a challenged statute will cause individual out-of-state businesses to lose profits. *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d at 313.

▇▇▇ There is a presumption in favor of a legislation's constitutionality. *See IMS Health Inc. v. Ayotte*, 550 F.3d at 63 (cit-

ing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 78, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)). "As the Seventh Circuit wisely observed when confronted with a similar state statute lacking any built-in geographic restriction, it would make no sense to read the statute to regulate out-of-state transactions when the upshot of doing so would be to annul the statute." *IMS Health Inc. v. Ayotte*, 550 F.3d at 64 (citing *K–S Pharmacies, Inc. v. Am. Home Prod. Corp.*, 962 F.2d 728, 730 (7th Cir. 1992)). Coors has not provided any benefit in eliminating the Puerto Rico statute, nor has it illustrated any evidence of discrimination, facially, effectually or otherwise.

For those reasons, I recommend that plaintiff's motion for summary judgment be DENIED.

## V. Motion to Dismiss

### A. Background

I now report on the Secretary's motion to dismiss. (Docket No. 144.) The Secretary argues stridently that the *Levin* decision has a dispositive effect on this case, and should result in dismissal. (*Id.* at 2.) The plaintiff submits several parries, the majority of which are contingent upon the question of whether the *Levin* exceptions, discussed below at 195, apply. As an initial matter, because the plaintiff's motion for summary judgment will be considered and I recommend its rejection, its first argument might be rendered moot. The provision in the joint agreement requiring a stay of all proceedings until the summary judgment motion was decided upon, will soon be satisfied. Thus, the Secretary is free to pursue this motion.

As stated, the *Levin* Court expressly abrogated the First Circuit's holding in this case. The two relevant holdings concerned the applicability of the Butler Act and, through *in pari materia* extension, the Tax Injunction Act, as well as the principles of comity. Both were found by the First Circuit not to bar Coors from pursuing its case; both were ultimately overruled by the United States Supreme Court.

The First Circuit found the Butler Act & the Tax Injunction Act inapplicable to this case because the suit seeks to raise taxes, not reduce them. The appellate court concluded that "since the Butler Act is read in parallel to the TIA, and since it similarly only restricts the district courts from entertaining suits 'for the purpose of restraining the assessment or collection' of taxes of Puerto Rico, we read it, according to *Hibbs*, to only apply where plaintiffs seek to challenge taxes in a way that would reduce the flow of state tax revenue." *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 14 (citing *May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1267 (9th Cir.2004)). The court also drew support from juxtaposing *Hibbs* to the Tenth Circuit case *Hill v. Kemp* ("*Hill*"). In *Hill*, a group brought a First Amendment challenge against Oklahoma's statutory scheme for speciality license plates for automobiles, which expressly included "choose life," and "adoption creates families" plate options, both of which were easier to procure than license plates bearing messages in support of abortion rights. *Hill v. Kemp*, 478 F.3d 1236, 1239–40 (10th Cir.2007). The defendants argued that the suit was barred by the Tax Injunction Act. *Id.* at 1239. The Tenth Circuit refrained from enjoining the state law on evidentiary grounds, as any decision would be based on economic speculation. Otherwise, "judges might be free to become second rate, supply-side economists, hazarding guesses that enjoining this or that revenue raising measure would help rather than hurt overall tax collections." *Coors Brewing Co. v. Méndez–Torres*, 562 F.3d at 14 (citing *Hill v. Kemp*, 478 F.3d at 1250.)

The First Circuit distinguished *Hill* from the instant case, as the remedy in that case was the economically uncertain action of elimination of a certain product "[that] might be genuinely hard to predict, [whereas] the elimination of a special tax exemption is much more likely to increase rather than decrease revenues." *Coors Brewing Co. v. Méndez–Torres,* 562 F.3d at 15. Ultimately, the court found that "this case is more like *Hibbs* than *Hill*[,]" and concluded that the action was not barred by the Butler Act. *Id.* at 16.

Second, the First Circuit determined that comity had a restricted application in light of *Hibbs.* In so doing, it expressly overrode its earlier ruling in *U.S. Brewers. Coors Brewing Co. v. Méndez–Torres,* 562 F.3d at 16. The court interpreted the "*Hibbs* footnote" to mean that comity did not bar the door to federal court, as such an invalidation would necessarily result in the repeal of a tax exemption that would raise tax revenue. *Id.* at 18. In concluding that "*Hibbs* effected a change in the law such that neither the Butler Act nor related principles of comity serve to bar Coors's complaint[,]" *id.,* the court held:

> The Court did observe that *U.S. Brewers* was based on principles of comity related to the Butler Act, and not the TIA. But this observation cannot serve to save *U.S. Brewers* since the Butler Act is read analogously to the TIA and since the *Hibbs* Court also limited principles of comity under the TIA. In light of the surrounding discussion, and considering the earlier footnote limiting the scope of comity, we read the Court's citation to *U.S. Brewers* simply as an acknowledgment of a related case, and not as an endorsement of its result.

*Coors Brewing Co. v. Méndez–Torres,* 562 F.3d at 17–18 (citation omitted).

The Supreme Court did not share this interpretation of *Hibbs.* Rather, the Court found that *Hibbs* had a more "modest reach." The footnote, Justice Ginsburg explained, was not meant to recast the comity doctrine, but was merely intended to convey that *Hibbs* was a poor fit for comity. *Levin v. Commerce Energy, Inc.,* 130 S.Ct. at 2335. Several idiosyncratic issues led to the Court to its decision in *Hibbs:* the statute at issue was for allegedly unconstitutional purposes; the party bringing suit was a third party, not directly affected; and the federal court was no less equipped to adjudicate the issue, as the only remedy, invalidation of the tax credit, would not violate the TIA. *Levin v. Commerce Energy, Inc.,* 130 S.Ct. at 2335–36. Thus, the Court found that this amalgam of ad-hoc factors could be used to permit federal jurisdiction. *Id.* at 2336. The Court also maintained that "so long as state courts are equipped fairly to adjudicate[,]" federal courts should refrain from taking a case. *Id.* at 2334.

Thus, at this stage in the litigation, there are now two, and only two avenues for this court to retain this case. First, a confluence of *Levin*-like factors that would, in sum, permit jurisdiction. Or, a persuasive argument that the state court would not fairly and adequately adjudicate the case. I address each in turn.

### B. Standard of Review

■ "Under Rule 12(b)(1), a defendant may move to dismiss an action against him for lack of federal subject matter jurisdiction." *Rivera v. State Ins. Fund Corp.,* 410 F.Supp.2d 57, 59 (D.P.R.2006) (citing Fed.R.Civ.P. 12(b)(1)). "The party asserting jurisdiction has the burden of demonstrating its existence." *Id.* (citing *Skwira v. United States,* 344 F.3d 64, 71 (1st Cir. 2003)) (citing *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995)). "Rule 12(b)(1) is a 'large umbrella, over-spreading a variety of different types of challenges to subject–matter jurisdiction,' in-

cluding ripeness, mootness, the existence of a federal question, diversity, and sovereign immunity." *Ivyport Logistical Servs., Inc. v. Caribbean Airport Facilities, Inc.,* 502 F.Supp.2d 227, 230 (D.P.R.2007) (quoting *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 362–63 (1st Cir.2001)).

## C. Discussion

### i. *Levin* Exception

■ To reiterate, the *"Levin* Exception" factors are: (1) a statute's unconstitutional purpose, requiring heightened judicial scrutiny; (2) brought by a third-party; where (3) the federal courts are no less equipped to handle the case. *Levin v. Commerce Energy, Inc.,* 130 S.Ct. at 2335–36. The Secretary argues that none of these elements are present. "Plaintiff allege[s] that a state's tax scheme is discriminatory because it favors some of its competitors, and does not seek to impact its tax liability but rather, to increase the tax burden of the competitors ... [p]lainly said, this case contains all of the factors that the *Levin* court unanimously found to justify dismissal." (Docket No. 144, at 10.) The plaintiff does not address these issues in its reply brief. (Docket No. 151.) I agree with the Secretary. None of the elements are present in this case. With the dormant Commerce Clause argument dismissed, Coors does not provide any constitutional arguments. Coors would be directly affected by any remedial action taken by this court. And its requested redress, repeal of a state tax statute, is an action far better adjudicated in the Puerto Rico courts. Thus, the *Levin* exceptions do not apply.

### ii. Adequate State Remedy

■ Finally, this court may maintain jurisdiction if the state courts would not provide an adequate remedy. The plaintiff stresses this point heavily. "The Com-

monwealth courts do not provide Coors with an adequate forum for resolution of its federal claims ... these courts will not provide Coors a 'full hearing and judicial determination at which [it] may raise any and all constitutional objections to the tax.' " (Docket No. 151, at 10.) The plaintiff alleges that adjudicating in the Puerto Rico courts would amount to "[a] pro forma process that leads to a predetermined result. . . ." (*Id.*) Coors goes on to allege that as a result of the 1978 *Beer Importers P.R.* case, the courts would in essence invoke *stare decisis* to preclude any future challenge, despite the fact that the 2002 and 2004 Amendments would render a different question before the courts. (*Id.* at 10–11.) "Thus, whether the 1978 version violated the dormant Commerce Clause would have no bearing on whether it imposes an unconstitutional burden on commerce today." (*Id.* at 10.) Ultimately, the court's "wooden invocation of *stare decisis* as a justification for avoiding the merits of a dormant Commerce Clause challenge to the Special Exemption is essentially a 'pre-printed rejection slip[,]' and, Coors alleges, "[any] dormant Commerce Clause challenges to the Special Exemption will not be considered on the merits in Puerto Rico courts but summarily rejected." (*Id.* at 11.)

## D. Analysis

In *Asoc. Importadores de Červeza v. E.L.A.,* the Puerto Rico Supreme Court considered the constitutionality of Act No. 69 and amended sections 4002 and 4023, and whether they violated the dormant Commerce Clause. *Asoc. Importadores de Cerveza v. E.L.A.,* 171 D.P.R. at 141–42, P.R. Offic. Trans. 92, at 2. The petitioners, the Puerto Rican Beer Importers Association, sought declaratory judgment against the Commonwealth, asking that Section 2 of Act No. 69, which grants a scaled tax

exemption to producers not exceeding thirty-one million gallons annually, be declared unconstitutional. *Id.* The defendants moved for dismissal under the Puerto Rico Supreme Court's holding in *U.S. Brewers P.R.. Asoc. Importadores de Cerveza v. E.L.A.*, 171 D.P.R. at 142, P.R. Offic. Trans. 92, at 3. The Secretary alleged that the *U.S. Brewers* case resolved the controversy at hand, and that no violation of the Constitution was involved. *Id.* This is essentially the same argument that Coors is making in the case at bar.

Although the Puerto Rico Supreme Court affirmed the rulings of the lower courts, it was not a *pro forma* rejection. Rather, it considered in-depth what applicability, if any, the dormant Commerce Clause held in Puerto Rico and, if so, whether Act No. 69 violated it. In a pithy decision, the Court analyzed the applicability from multiple angles, drawing from state precedent,[17] federal precedent,[18] constitutional precedent,[19] and Puerto Rico's own 'pros and cons' for doing so.[20] Though the Court maintained that Puerto Rico has special status within the Union, and cited United States Supreme Court precedent that not all provisions of the Constitution apply to Puerto Rico, it nonetheless held:

> [W]e underscore the pronouncements of the First Circuit Court of Appeals in *Trailer Marine Transport Corp.* [*v. Rivera Vazquez*, 977 F.2d 1 (1st Cir.1992) ], that complete economic integration—the fundamental aim of the Commerce Clause—is as relevant to Puerto Rico as it is for any State of the Union. In other words, there are *no* valid legal grounds to argue that Puerto Rico—absent federal legislation—may discriminate against the products of other states, or against foreign products, in order to favor its own.

*Asoc. Importadores de Cerveza v. E.L.A.*, 171 D.P.R. at 160, P.R. Offic. Trans. 92, at 12.

Having determined that Puerto Rico was subject to the dormant Commerce Clause, the Puerto Rico Supreme Court next analyzed the challenged statutes under it. They performed much the same analysis that I did above, considering the Puerto Rico legislature's intent, evidence of possible discriminatory intent, and the possible presence of facial discrimination.

---

17. "[N]either our Constitution nor Public Law 600, nor the Federal Relations Act, states that said clause would apply to Puerto Rico and, therefore, it did not become part of the compact signed between the United States and Puerto Rico." *Asoc. Importadores de Cerveza v. E.L.A.*, 171 D.P.R. at 155, P.R. Offic. Trans. 92, at 9.

18. "[T]he First Circuit Court of Appeals has reiterated, without further explanation, that the Commerce Clause was applicable to Puerto Rico." *Asoc. Importadores de Cerveza v. E.L.A.*, 171 D.P.R. at 158, P.R. Offic. Trans. 92, at 11.

19. "There can surely be no doubt in anyone's mind that the United States—at least in trade commerce matters-enjoys broad powers to prevent what the United States Supreme Court has characterized as 'the tendencies toward economic Balkanization' and 'in the absence of an express provision excluding Puerto Rico from the application of the dormant Commerce Clause, there is *no* reason to believe that Congress authorized Puerto Rico to discriminate against interstate and foreign commerce.' " *Asoc. Importadores de Cerveza v. E.L.A.*, 171 D.P.R. at 160–61, P.R. Offic. Trans. 92, at 12–13 (footnote omitted).

20. Listing the "most convincing grounds against" and "most persuasive arguments in favor of" the application of the dormant Commerce Clause and, upon comparison, concluding that "the arguments favoring the application of the dormant Commerce Clause to Puerto Rico are more persuasive than those against it." *Asoc. Importadores de Cerveza v. E.L.A.*, 171 D.P.R. at 155–156, 159, P.R. Offic. Trans. 92, at 9, 12.

*Asoc. Importadores de Cerveza v. E.L.A.,* 171 D.P.R. at 166, P.R. Offic. Trans. 92, at 16. They performed substantially similar analysis of the plaintiff's proffered case in support, *Bacchus Imps., Ltd. v. Dias. Asoc. Importadores de Cerveza v. E.L.A.,* 171 D.P.R. at 167–68, P.R. Offic. Trans. 92, at 17. The Puerto Rico Supreme Court similarly dismissed claims of facial discrimination outright. It also distinguished *Bacchus* on similar grounds. *Asoc. Importadores de Cerveza v. E.L.A.,* 171 D.P.R. at 168–69, P.R. Offic. Trans. 92, at 17–18. The Court, in finding that Act 69 does not violate the dormant Commerce Clause, concluded that:

> 1) it has no discriminatory purpose; 2) it has no discriminatory effect; 3) it applies to an activity that has a substantial nexus to Puerto Rico; 4) it is fairly apportioned; 5) it is fairly related to services offered by the state; 6) it does not present a substantial risk of multiple taxation; and 7) it affects no possible interest of the federal government to maintain uniformity in international commerce. To conclude, we believe that both the Court of First Instance and the Court of Appeals *acted correctly* in dismissing the verified petition that led to this case."

*Asoc. Importadores de Cerveza v. E.L.A.,* 171 D.P.R. at 171–72, P.R. Offic. Trans. 92, at 19.

██ Under the TIA and the principles of comity, as long as the state provides sufficient remedies, the taxpayer is prohibited from filing suit in federal court. *See Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976). A state remedy is plain, speedy and efficient if it is procedurally adequate. *See Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 512, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) (state remedy must meet minimal procedural requirements). A state need only provide a "full hearing and judicial determination" at which a taxpayer may raise any and all constitutional objections to the tax. *Id.* at 514, 101 S.Ct. 1221; *Esso Standard Oil Co. v. Freytes,* 467 F.Supp.2d 156, 168–69 (D.P.R.2006).

There is nothing in the record that suggests that Coors would not receive a plain, speedy and efficient trial in the Puerto Rico court system. Contrary to the plaintiff's claims, the Puerto Rico courts have addressed similar cases substantively, taking care to provide strong support for their decisions. Nor did Coors give any evidence of current Puerto Rico case law that would indicate a decided lack of adjudicatory options in the state courts. Therefore, it is there that they must pursue their avenues of redress.

The plaintiff has three additional claims. All three first required that this court rule the legislation unconstitutional. As the court should decline to do so, all of Coors' remaining claims would be rendered moot.

## VI. CONCLUSION

██ "In this circuit, we have [found] ... exceptions to [the] *stare decisis* rule. The first exception applies when '[a]n existing panel decision [is] undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court....'" *United States v. Rodríguez–Pacheco,* 475 F.3d 434, 441 (1st Cir. 2007) (quoting *Williams v. Ashland Eng'g Co.,* 45 F.3d 588, 592 (1st Cir.1995)); *United States v. Royal,* 174 F.3d 1, 9–10 (1st Cir.1999). The *Levin* decision is such an exception. Coors has failed to establish that the beer tax is constitutionally infirm. Nor has Coors proven that it can elude the statutory grasp of the Butler Act or, in the alternative, that it can challenge the statutes under one of the *Levin* exceptions. Finally, Coors' argument that the state court would provide an inadequate forum

for its claims is unconvincing. As such, I recommend that the district court grant the defendant's motion to dismiss, Docket No. 144.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within five (5) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).